[Cite as *12100 Buckeye Ltd. v. Council for Economic Opportunities in Greater Cleveland*, 2021-Ohio-4517.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

12100 BUCKEYE LTD., :

    Plaintiff-Appellant, :

                        No. 110290

v. :

COUNCIL FOR ECONOMIC :
OPPORTUNITIES IN GREATER
CLEVELAND, :

    Defendant-Appellee. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 23, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-928011

---

### *Appearances:*

Singerman, Mills, Desberg & Kauntz Co., L.P.A., and
Michael R. Stavnicky, *for appellant*.

Horton & Horton Co., L.P.A., and Brett E. Horton, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} Plaintiff 12100 Buckeye Ltd. ("Landlord") appeals from the trial court's journal entry denying its summary judgment motion and granting defendant

Council for Economic Opportunities in Greater Cleveland's ("Tenant") summary judgment motion in this case concerning a commercial lease. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I. Facts and Procedural History

{¶ 2} In September 2013, Landlord and Tenant entered into a commercial lease ("the 2013 Lease") regarding property located at 12100 Buckeye Road in Cleveland ("the Property"). The 2013 Lease ran from September 1, 2013, through January 31, 2017. The 2013 Lease contained an option to renew for a ten-year term, but Tenant did not exercise this option. During the course of the 2013 Lease, Tenant issued annual purchase orders to Landlord for the rent and paid rent monthly thereafter.

{¶ 3} In February 2017, Landlord and Tenant entered into a new commercial lease ("the 2017 Lease"). Under the terms of the 2017 Lease, Landlord leased the property to Tenant for one year at $2,650 per month, for a "total lease payment" of $31,800. Consistent with Tenant's previous course of conduct, it issued a purchase order to Landlord for one year's rent under the 2017 Lease and paid rent in the amount of $2,650 each month. Pertinent to this appeal, the 2017 Lease states in part as follows:

> TERM. The lease term will begin on February 1, 2017 and will terminate on January 31, 2018.
>
> * * *
>
> POSSESSION. Tenant shall be entitled to possession on the first day of the term of the Lease, and shall yield possession to Landlord on the

last day of the term of this Lease, unless otherwise agreed by both parties in writing.

* * *

HOLDOVER. If Tenant maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to the normal payment rate set forth in the Renewal Terms paragraph.

* * *

OPTION TO RENEW. Tenant shall have the right to two additional five year terms by giving written notice no later than 60 days prior to the end of the term or renewal term. The lease terms during any such renewal shall be the same as those contained in this Lease except that the lease installment payments shall be $2,650.00.

{¶ 4} Tenant maintained possession of the Property after January 31, 2018, paying monthly rent to Landlord through July 2019. Tenant issued to Landlord its customary annual purchase orders dated February 1, 2018, and February 1, 2019. Tenant stopped paying rent and vacated the premises in August 2019.

{¶ 5} On January 17, 2020, Landlord filed a complaint against Tenant alleging breach of lease, unjust enrichment, and promissory estoppel. On January 11, 2021, the trial court granted Tenant's summary judgment motion and denied Landlord's summary judgment motion.

{¶ 6} It is from this order that Landlord appeals.

## II. Law and Analysis

### A. Summary Judgment Standard of Review

{¶ 7} Appellate review of an order granting summary judgment is de novo. *Marusa v. Erie Ins. Co.,* 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7.

Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## B. Breach of Lease

**{¶ 8}** We start with "the basic premise that leases are contracts and are subject to the traditional rules of contract interpretation." *Mark-It Place Food, Inc., v. New Plan Excel Realty Trust, Inc.,* 156 Ohio App.3d 65, 2004-Ohio-411, 804 N.E.2d 979, ¶ 29 (4th Dist.). To succeed on a breach-of-contract claim, the plaintiff must show that "(1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." *Kirkwood v. FSD Dev. Corp.*, 8th Dist. Cuyahoga No. 97371, 2012-Ohio-2922, ¶ 13.

**{¶ 9}** The "interpretation of a contract is a matter of law which is subject to a de novo standard of review." *Lo-Med Prescription Servs. v. Eliza Jennings Group*, 8th Dist. Cuyahoga No. 88112, 2007-Ohio-2112, ¶ 16.

## C. Analysis

### 1. The Purchase Orders, Lease Renewal, and Possession

**{¶ 10}** It is undisputed that the express terms of the 2017 Lease provided that it "will terminate on January 31, 2018" and that Tenant maintained possession of the Property after that date. It is also undisputed that Tenant paid monthly rent

to Landlord through July 2019 and stopped paying rent and vacated the premises in August 2019. Additionally, it is undisputed that there is no written agreement between the parties after the 2017 Lease.

**{¶ 11}** Landlord's first, second, and fourth assignments of error challenge the trial court's granting summary judgment to Tenant and denying Landlord's motion for summary judgment. The main question the trial court considered on the parties' cross-motions for summary judgment was whether Tenant breached the 2017 Lease. To determine this, we must first determine whether Tenant renewed the 2017 Lease under the Option to Renew provision or was a holdover tenant under the Holdover provision.

**{¶ 12}** According to the terms of the 2017 Lease, Tenant had the option to renew the Lease for "two additional five year terms by giving written notice no later than 60 days prior to the end of the term or renewal term." Landlord argues that in "January 2018 and January 2019, [Tenant] provided written notice to Landlord that the Lease was continuing for several years going forward." As evidence of this position, Landlord attached to its summary judgment motion the 2018 and 2019 purchase orders from Tenant to Landlord. The details of these purchase orders follow.

> Purchase Order No. 17014, dated 2/1/2018, states: "ANNUAL RENT: 2/1/208 [sic] – 1/31/2019" and lists a quantity of 12, a unit price of $2,650.00, and a total of $31,800.00.

> Purchase Order No. 18009, dated 2/1/2019, states: "ANNUAL RENT: 2/1/2019 – 1/31/2020" and lists a quantity of 12, a unit price of $2,650.00, and a total of $31,800.00.

{¶ 13} The first purchase order at issue is dated February 1, 2018, which is one day after the 2017 Lease terminated. The second purchase order at issue is dated February 1, 2019, which is one year and one day after the 2017 Lease terminated. There is no evidence that Tenant notified Landlord of anything in writing 60 days before January 31, 2018, which is when the 2017 Lease terminated. Further, there is no evidence that Landlord responded in writing when it received either purchase order. The Possession provision of the 2017 Lease required Tenant to yield possession of the Property on January 31, 2018, "unless otherwise agreed by both parties in writing." There is no such writing, other than the 2017 Lease itself, which includes the Holdover provision discussed below.

{¶ 14} On appeal, Landlord argues that it had an "unshakable belief that the Lease had of course been renewed * * *." However, there is no evidence in the record to support Landlord's false belief that Tenant renewed the lease. Landlord president James Grodin ("Grodin") was asked at his deposition if "it was your understanding that essentially, even though the lease may have said it was a one year term, it was actually a five year term." Grodin responded, "One plus five, yes. * * * It was a given, yes, that they wanted that five year lease, and that they were only doing the interim lease for internal purposes having nothing to do with the possession of the property." However, Grodin also testified that he had no knowledge of Tenant's internal operations.

{¶ 15} Grodin further testified that Tenant issued a purchase order for rent annually since 2013, and Tenant never issued a purchase order that covered more

than one year's rent. Grodin testified that, other than the purchase orders, there were no documents that would have given him "notice that [Tenant was] going to exercise [its] options to renew the lease." He testified that he did not receive notice 60 days prior to the expiration of the 2017 Lease that Tenant was exercising its option to renew the 2017 Lease. Asked if he had "any discussions with anyone at Tenant in connection with the issuance of th[e] purchase order[s]," Grodin answered, "No, I did not."

{¶ 16} In other words, nothing about Tenant's conduct should have led Landlord to believe that the 2017 Lease was renewed for an additional five-year term. Identical to the fact that the purchase orders issued annually under the 2013 Lease did not renew or extend the 2013 Lease, the 2018 and 2019 purchase orders did not renew or extend the 2017 Lease. Therefore, we find that, based on the undisputed evidence, Tenant did not renew the 2017 Lease.

## 2. The Lease Holdover Provision

{¶ 17} In addition to arguing that the 2018 and 2019 purchase orders amount to renewals of or an extension of possession under the 2017 Lease, Landlord argues that the 2017 Lease was "never terminated by either party; thus, the holdover clause relied upon was inapplicable." More specifically, Landlord argues that the "holdover provision does not state that it applies to the natural expiration of the [2017] Lease * * *"; rather, it only applies if the 2017 Lease was "terminated." We note again that, per the express terms of the document, the 2017 Lease "will terminate" on January 31, 2018, Tenant remained in possession of the property after

this date, the parties did not enter into another written agreement as referenced in the Possession provision of the 2017 Lease, and Tenant did not renew the 2017 Lease. The only section of the 2017 Lease that speaks to this circumstance is the Holdover provision.

{¶ 18} According to the terms of the 2017 Lease, the Holdover provision becomes operative if Tenant "maintains possession of the [Property] for any period after the termination of this Lease * * *." Absent a separate written agreement, nothing more need happen for the Holdover provision to apply. The word "termination" is not defined in the 2017 Lease, and there is not a "termination" section in the 2017 Lease.

{¶ 19} Basic contract interpretation dictates that "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245-246, 374 N.E.2d 146 (1978). On the other hand, when contract language is unclear or ambiguous, courts may consider extrinsic evidence "in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ents., Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

{¶ 20} Termination is defined as "[t]he act of ending something" or "[t]he end of something in time or existence; conclusion or discontinuance." *Black's Law Dictionary* 619 (8th Ed.2004). Using the plain meaning of the word "termination," we find that the "termination" date was the same as the express date on which the

2017 Lease "will terminate": January 31, 2018. Tenant maintained possession of the Property after the termination date; therefore, Tenant was a holdover tenant under the express terms of the 2017 Lease. Tenant paid rent at the contracted for amount of $2,650 per month through July 2019 and vacated the property when it ceased paying rent; therefore, Tenant did not violate the Holdover provision of the 2017 Lease.

{¶ 21} Accordingly, upon review, we find that Landlord failed to present any evidence that created a genuine issue of material fact as to whether Tenant breached the terms of the 2017 Lease. The court did not err by granting summary judgment to Tenant and denying summary judgment to Landlord. The first, second, and fourth assignments of error are overruled.

### 3. The Affidavit

{¶ 22} In its third assignment of error, Landlord challenges the trial court's decision to strike the phrases "renewing the Lease" and "acknowledging the renewal of the Lease" from Grodin's affidavit. This affidavit, which was attached as evidence to Landlord's summary judgment motion, stated in pertinent part as follows:

> In early 2018, [Tenant] issued a notice to me labeled a Purchase Order renewing the Lease. * * *

> In early 2019, [Tenant] issued a notice to me labeled a Purchase Order acknowledging the renewal of the Lease. * * *

{¶ 23} Pursuant to Civ.R. 56(E), "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the

affidavit." Personal knowledge is "[k]knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay." *Black's Law Dictionary* 873 (6th Ed.1990). Statements in affidavits purporting to be based on personal knowledge cannot be legal conclusions. *Sheridan v. Sheridan*, 8th Dist. Cuyahoga No. 97325, 2012-Ohio-4271, ¶ 35.

{¶ 24} "The decision to grant or deny a motion to strike an affidavit lies within the broad discretion of the trial court." *Hollingshead v. Util. Solutions Of Ohio, Inc.*, 5th Dist. Licking No. 2020 CA 0081, 2021-Ohio-3151, ¶ 15.

{¶ 25} In the case at hand, Grodin's statements that Tenant's purchase orders "renewed the Lease" are not statements based on personal knowledge. Rather, they amount to legal conclusions. Grodin can attest to the fact that he received the purchase orders, and he can attest to the express written terms of the purchase orders. He cannot, however, jump to the conclusion that these purchase orders renewed the 2017 Lease, which is the pivotal issue being challenged on summary judgment. Nor can Grodin testify in his affidavit as to what Tenant intended by issuing the purchase orders.

{¶ 26} Accordingly, we find that the court acted within its discretion when it struck portions of Grodin's affidavit that were legal conclusions outside of his personal knowledge. Landlord's third assignment of error is overruled.

### 4. Promissory Estoppel

{¶ 27} In its fifth and final assignment of error, Landlord argues that the "trial court erred in dismissing the promissory estoppel claim." We note that the

trial court did not dismiss any claims in the case at hand. Rather, the court granted judgment in favor of Tenant on all claims.

{¶ 28} "The elements of a claim for promissory estoppel are as follows: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Rucker v. Everen Secs.*, 8th Dist. Cuyahoga No. 81540, 2003-Ohio-1166, ¶ 24.

{¶ 29} "As a quasi-contractual claim, promissory estoppel is an alternative theory of recovery to a breach-of-contract claim. * * * Thus, the existence of an enforceable express contract between the parties bars recovery under a promissory estoppel claim." *Americana Invest. Co. v. Natl. Contr. & Fixturing, L.L.C.*, 10th Dist. Franklin No. 15AP-1010, 2016-Ohio-7067, ¶ 13. Because we found that the Holdover provision of the 2017 Lease controls the dispute between the parties, Landlord's promissory estoppel claim necessarily fails.

{¶ 30} This court has held that a "tenant who holds over and retains possession of the premises after the expiration of a term, without having made any new or different agreement as to rent, subjects himself or herself to a renewal or continuance of the liability to pay rent as fixed by the terms and conditions of the prior lease." *Fennell v. DeMichiei*, 8th Dist. Cuyahoga No. 106966, 2019-Ohio-252, ¶ 19. In the instant case, the parties contracted in the 2017 Lease for a month-to-month rental with installment payments of $2,650 in the event of a holdover. Therefore, we conclude as a matter of law that the parties were operating under the

Holdover provision of the 2017 Lease when Tenant maintained possession of the Property following the termination of the 2017 Lease.

{¶ 31} Furthermore, there is no evidence of a clear, unambiguous promise by Tenant to lease the Property beyond a month-to-month term ending when it paid the last installment in July 2019. Without a promise, Landlord's promissory estoppel claim must fail. Accordingly, Landlord's fifth and final assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

SEAN C. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR