[Cite as *Gurary v. John Carroll Univ.*, 2024-Ohio-3114.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| JONATHAN GURARY, | : | |
| Plaintiff-Appellant, | : | No. 113698 |
| v. | : | |
| JOHN CARROLL UNIVERSITY, | : | |
| Defendant-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART; REMANDED
**RELEASED AND JOURNALIZED:** August 15, 2024

---

Civil Appeal from the Lyndhurst Municipal Court
Case No. 23CVF00232

---

***Appearances:***

Jonathan Gurary, *pro se.*

Freeman, Mathis & Gary, LLP and Steven J. Forbes, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} In this accelerated appeal, plaintiff-appellant, Jonathan Gurary, appeals the trial court's order granting summary judgment in favor of defendant-appellee, John Carroll University ("JCU"), on his claims of breach of contract, promissory estoppel and fraud, arising out of JCU's failure to pay Gurary, as part of

an across-the-board salary reduction, that which it had contracted to pay him. Gurary contends that the trial court abused its discretion in its "handling of [d]iscovery," erred in excluding an affidavit he submitted to support his claims on summary judgment and erred in granting summary judgment on all his claims in favor of JCU.

{¶ 2} For the reasons that follow, we affirm the trial court on Gurary's promissory estoppel and fraud claims, reverse the trial court on Gurary's breach-of-contract claim and remand for further proceedings.

**Procedural and Factual Background**[1]

{¶ 3} On or about April 27, 2020, Gurary, a nontenured faculty member, and JCU entered into an employment contract (the "agreement" or the "contract") for the 2020-2021 academic year.[2] Pursuant to their agreement, Gurary was to be employed full-time at JCU "with the academic rank of Assistant Professor, Department of Mathematics and Computer Science." (Emphasis deleted.) Gurary agreed "to conduct such classes, extracurricular activities, and administrative work during said year assigned to him by the Administrators of the college or school in which he [was] assigned to teach and to render these services in a scholarly and efficient manner to the satisfaction of said officers." "In consideration for said services," JCU agreed to pay Gurary a salary of $71,000 "in twelve equal payments

---

[1] The facts set forth herein are based on the admissions in JCU's answer and the documents submitted with JCU's motion for summary judgment.

[2] The record reflects that JCU mailed a proposed contract to Gurary in mid-March 2020 and that Gurary signed it and sent it back to JCU on, or around, April 27, 2020.

on a monthly basis, with the first payment to be made on the 30ᵗʰ day of September." The contract further provided that "[i]t is understood and agreed by the parties hereto that this agreement shall be interpreted and construed in the light of the provisions of the Faculty Handbook of John Carroll University which are in force at the time it is issued."

{¶ 4} On or about May 29, 2020, JCU's President, Michael Johnson, sent an email to all faculty members and staff advising them that JCU would be "implement[ing] a salary reduction program for a 12-month period" for all employees and faculty members making at least $40,000. Salary reductions were to be implemented on a tiered basis. Faculty members making $70,000-$99,999 would receive "a 7% pay cut," "reduced on a temporary basis for the 2020-21 academic year, effective as of the September 2020 payroll period and extending through August 31, 2021." According to the email, the salary reductions were being implemented "[i]n order to maintain our fiscal strength and avoid reaching the point of financial instability" during the COVID-19 pandemic. "All temporary savings" would be "reevaluated in advance of the 2021-22 fiscal year."

{¶ 5} As a result of its salary reduction program, JCU reduced Gurary's salary for the 2020-2021 academic year by $4,970 to $66,030. Gurary did not agree to the reduction in his salary and no written modification of the contract was entered into between Gurary and JCU reflecting this change.

{¶ 6} On or about September 3, 2021, JCU's Human Resources Department sent an email to Gurary stating that he would receive "a one-time

retention bonus payment in the amount of $3,475.26 in [his] pay on September 30."

The email provided the following explanation of the "retention bonus payment":

**About the Retention Bonus**

John Carroll University applied for federal assistance available to higher education institutions via the Coronavirus Aid, Relief, and Economic Security (CARES) Act. We were fortunate to receive federal funds that allowed us to offset some revenue losses and increased expenses due to COVID-19.

We recognize that John Carroll was able to sustain operations and focus on our students because of financial sacrifices and savings made by employees, including the reduction of salary that impacted staff and faculty earning over $40,000 per year. As such, federal funding from the Employee Retention Credit (ERTC), a provision of the CARES Act, will be shared with staff and faculty who were impacted by salary reductions in 2020-2021 and who remain committed to employment with the University now and into the future.

This retention bonus amount represents your proportionate share of the ERTC grant in relation to the reduction in salary you experienced.

University employees who will be actively employed on September 30, 2021, will receive the bonus. If you provide notice or indicate your intention to resign from the University on or prior to September 30, 2021, you are not eligible for the retention bonus.

The payment will be issued to you as a cash bonus. . . .

(Emphasis in original.) Gurary continued to be employed by JCU, and, in or around September 30, 2021, JCU paid Gurary a $3,475.26 "retention bonus."

{¶ 7} On January 31, 2023, Gurary, pro se, filed a small claims complaint in the Lyndhurst Municipal Court against JCU, seeking to recover $4,970 in damages plus interest and costs for the reduction in his contracted salary during the 2020-2021 academic year. On April 5, 2023, JCU filed a motion to transfer the case

from the small claims docket to the regular docket along with a demand for a jury trial. The trial court granted the motion, and the case was transferred to the regular docket.

{¶ 8} On May 8, 2023, Jennifer Rick, JCU's Assistant Vice President, Human Resources, sent a letter to Gurary, advising him that "due to a calculation error," he was one of six employees "who did not receive a retention bonus payment amount" in 2021 "that represented an amount that was equivalent to the reduction in salary in the 2020-2021 academic year" and that, "[a]s a result," JCU was "issuing to those affected employees a supplemental bonus payment in the pay in May 2023." She stated that Gurary was entitled to receive a "one-time bonus payment in the amount of $1,494.74" as a cash bonus. In her letter, Rick described the purpose of the 2021 "retention bonus payment" as follows:

> The bonus was made in gratitude for the continuing work by those who were impacted by salary reductions in the 2020-21 academic year and who remained committed to employment with the University at that time and into the future. While the University was not obligated to make such a bonus payment and the bonus did not represent payment for hours worked, the University provided the bonus in appreciation for continued commitment of JCU employees during and following the COVID pandemic.

Since Gurary was then no longer employed by JCU, to receive the "supplemental bonus," Gurary needed to complete and return an IRS Form W-9 to JCU. JCU thereafter issued the "supplemental retention bonus payment" to Gurary.

{¶ 9} On July 16, 2023, Gurary, pro se, filed an amended complaint in which he asserted claims of breach of contract, promissory estoppel and fraud

against JCU arising out of JCU's reduction of his salary. Gurary alleged that he did not seek alternative employment in reliance on JCU's promise to pay him the salary specified in the contract and that he suffered damages as a result of alleged misrepresentations by JCU regarding its "financial exigency" as justification for the salary reductions, on which he relied to his detriment. Gurary sought to recover the $4,970 allegedly owed him pursuant to the terms of his contract, along with statutory damages under R.C. 4113.15(B) — or, in the alternative, "the value lost due to [Gurary's] reliance on [JCU's] promises to pay him the salary stated on the employment contract, and loss of potential earnings if [Gurary] were to seek alternative employment" — plus interest and costs. On his fraud claim, Gurary also sought to recover punitive damages. In support of his allegations, Gurary attached an unsigned,[3] unnotarized "affidavit" to his amended complaint. In that document, he described the terms of his employment with JCU and asserted that he signed the proposed contract for the 2020-2021 academic year, mailed it back to JCU as requested and received an email from JCU on May 5, 2020 confirming receipt of the signed contract. In his "affidavit," Gurary also purported to authenticate a dozen documents attached as exhibits, including copies of (1) the proposed contract, (2) a letter from JCU's interim dean for the College of Arts and Sciences to Gurary, dated March 12, 2020, enclosing the proposed contract,[4] (3) an unsigned letter from

---

[3] Although Gurary's name was typed at the bottom of the affidavit, it contained no handwritten (or electronic) signature.

[4] The letter stated, in relevant part:

Steven Herbert, JCU's Provost and Academic Vice President, to Gurary, dated August 2020, advising Gurary that "consistent with the general salary reduction program and as provided for under the provisions of the *Faculty Handbook*," he would be receiving a 7 percent pay cut during the 2020-21 academic year, (4) email correspondence between Gurary and Ryan Armsworthy, an employee in JCU's human resources department regarding the reduction of Gurary's pay, (5) a letter dated April 16, 2021 from Gurary to JCU's Provost and Academic Vice President and/or legal representative regarding his unpaid salary, (5) a letter dated May 4, 2021 from James Krukones, JCU's Vice Provost for Academic Affairs, to Gurary responding to Gurary's April 16, 2021 letter, (6) excerpts of JCU's financial statements and Form 990 tax forms for 2020 and 2021 that Gurary purportedly "retrieved from Propublica Non-profit Explorer in July 2023," (7) excerpts from JCU's faculty handbook, (8) the May 8, 2023 letter from Rick regarding the

---

Enclosed please find your contract for the 2020-21 academic year. You will note that the salary figure indicated on it is the same as that which appears on your 2019-20 contract. In view of our financial challenges, the administration has chosen to maintain salaries at their current level for the time being. In a few weeks, however, the fiscal situation for next year will be clearer. If the outlook warrants it, an increase in the faculty contracts for 2020-21 will be enacted.

You may choose to sign the enclosed contract at this time, knowing that your salary will not fall below the figure that appears on it. Or you may wait until the administration makes a final decision about faculty salaries for 2020-21. That will occur on or around May 15, 2020. At that time you will be asked to sign either the enclosed contract or, in the case of a salary increase, the new contract that will be issued to you.

The record reflects that Gurary signed the enclosed contract on or about April 27, 2020 and returned it to JCU.

supplemental retention bonus payment and (9) an email dated August 25, 2020 from the JCU Faculty Handbook Committee regarding proposals for a reduction in faculty salaries and termination of academic programs.

{¶ 10} JCU filed an answer in which it admitted that it mailed Gurary a proposed employment contract for the 2020-2021 academic year in mid-March 2020 and that it did not "reissue contracts" for the 2020-21 year reflecting the salary reductions. With respect to the exhibits referenced in Gurary's "affidavit" and the amended complaint, JCU stated that they "speak for themselves." JCU otherwise denied the material allegations of the amended complaint and asserted various affirmative defenses.

{¶ 11} The trial court set a case-management schedule, including a discovery deadline and deadlines for filing dispositive motions, and the parties engaged in discovery. During the course of discovery, several discovery disputes arose. On October 13, 2023, Gurary filed a motion to compel discovery and a request for sanctions, arguing that JCU had failed to respond to its requests for production, had failed to comply with a court order requiring the production of salary and bonus information for nontenured faculty members and had failed to respond to its requests to schedule the deposition of JCU's Provost, Steve Herbert. JCU opposed the motion, arguing that it had complied with the court's order regarding the production of salary information, the court had not ordered the deposition of Herbert, Gurary had not subpoenaed Herbert and Herbert's testimony was "inapplicable."

{¶ 12} On November 16, 2023, the parties each filed a motion for summary judgment. In its motion, JCU argued that it was entitled to summary judgment on all Gurary's claims because (1) the contract, which incorporated by reference the faculty handbook, permitted JCU to reduce Gurary's salary, (2) "the year following the reduction," JCU "voluntarily paid" Gurary "an amount that was in total equal to the salary reduction" and, therefore, Gurary was not harmed by the salary reduction, (3) Gurary could not bring a promissory estoppel claim against JCU because he had a contract with JCU and (4) Gurary could not prove fraud because he could not show that JCU had made a false statement with knowledge of its falsity upon which Gurary had reasonably relied. In support of its motion, JCU attached an affidavit from Rick in which she described the facts and circumstances surrounding the 2020-2021 salary reduction, the payment of retention bonus payments in 2021, JCU's miscalculation of the retention bonus payments due six faculty members, including Gurary, and JCU's payment of an additional "retention bonus amount" to those six faculty members. In her affidavit, Rick also identified and authenticated several exhibits, including (1) JCU's contract with Gurary for the 2020-2021 academic year, (2) "the portion of the [faculty handbook] related to the reduction of faculty salaries," (3) the May 29, 2020 email from JCU president Michael Johnson regarding the salary reduction, (4) the September 3, 2021 email from JCU's human resources department to Gurary regarding the retention bonus payment and (5) Rick's May 8, 2023 letter to Gurary regarding JCU's miscalculation of his

supplemental bonus payment and offer to provide a supplemental retention bonus payment.

{¶ 13} In his motion, Gurary argued that he was entitled to summary judgment on his breach-of-contract and promissory estoppel claims because (1) there was no dispute that JCU unilaterally reduced his salary as specified in the contract, (2) the faculty handbook "does not address non-tenured faculty salary reductions," (3) there was "no additional consideration . . . to justify a contract modification," (4) the March 12, 2020 letter enclosing a copy of Gurary's proposed contract for the 2020-21 academic year explicitly stated, "You may choose to sign the enclosed contract at this time, knowing your salary will not fall below the figure that appears on it," (5) Gurary reasonably relied on that statement in continuing to work for JCU rather than seeking alternative employment, (6) a "retention bonus," contingent on Gurary's agreement to continue employment with JCU, does not constitute "salary repayment" and "does not negate damages incurred due to breach of contract or estoppel" and (7) even if the "retention bonus" were deemed a "salary repayment," Gurary would still be entitled to liquidated damages under R.C. 4113.15(B).

{¶ 14} With respect to his fraud claim, Gurary argued that various exhibits attached to his "affidavit" showed that while JCU's "higher authorities . . . repeatedly claimed that salary reductions were due to financial exigency," JCU's president "privately . . . acknowledged the absence of financial exigency." He also contended that although JCU represented that salary reductions were "'across the board' and

applied to all employees," documents showed that several other nontenured faculty members were "unaffected by the salary reduction" and certain members of the executive staff "received a lower pay cut than expected, no cut at all, or a raise." Gurary asserted that his "decision to continue employment" with JCU was "significantly influenced" by these misrepresentations and that if he "had known JCU's claims of exigency were untrue," he "would not have accepted the reduced terms" and "would have sought alternative employment immediately." Gurary requested that he be awarded $4,970 plus prejudgment interest on his breach-of-contract claim,[5] punitive damages of $9,940 on his fraud claim, $2,400 in liquidated damages pursuant to R.C. 4113.15(B) and postjudgment interest and costs — subject to the court's $15,000 jurisdictional limit. In support of his motion, Gurary attached a copy of the unsigned, unnotarized "affidavit" with accompanying exhibits that he attached to his amended complaint.[6]

{¶ 15} JCU filed a combined opposition to Gurary's motion for summary judgment and reply in support of its own motion for summary judgment and Gurary filed an opposition to JCU's motion. In their oppositions, the parties refuted each other's arguments and repeated their own, incorporating by reference previously

---

[5] Gurary acknowledged that if the trial court granted him summary judgment on his breach-of-contract claim, his promissory estoppel claim would be "moot."

[6] In his summary judgment motion, Gurary also references "Confidential Exhibit 1" as supporting his fraud claim. This exhibit was not attached to his motion for summary judgment, does not appear to have been filed with the trial court and is not part of the record on appeal.

filed affidavits and exhibits. In addition, JCU claimed that Gurary had not asserted a claim for liquidated damages and that Gurary's "unauthenticated documents should not be considered in determining whether [Gurary was] entitled to summary judgment."

{¶ 16} Gurary filed a motion to strike JCU's combined opposition and reply brief on the grounds that the local rules did not permit the filing of a reply brief without leave of court and JCU's filing of an unauthorized reply brief unfairly prejudiced Gurary and "grant[ed] [JCU] an unfair procedural advantage." In his motion to strike, Gurary also addressed JCU's claim that the documents attached to his motion for summary judgment lacked proper authentication, asserting that "[a]ll documents are verifiable copies from the Amended Complaint, where [Gurary's] affidavit specifically authenticates all 13 [sic] cited Exhibits," that JCU has "never challenged the authenticity of these documents" and that several of the documents were cited and relied upon by JCU in its own motion for summary judgment. He also disputed JCU's claim that he had not asserted a claim for liquidated damages in his amended complaint. JCU opposed the motion to strike, denying that its combined opposition/reply brief violated the local rules and stating, "[m]ore specifically," that it objected to Gurary's reliance on exhibit Nos. 5 to 8 of his motion for summary judgment — i.e., the excerpts of JCU's financial statements and Form 990 tax forms for 2020 and 2021 that Gurary purportedly "retrieved from Propublica Non-profit Explorer in July 2023" — "as he cannot authenticate the exhibits because he does not have personal knowledge of the documents."

**{¶ 17}** On December 1, 2023, Gurary filed a motion requesting a hearing on his motion to compel.

**{¶ 18}** On February 16, 2024, the trial court granted JCU's motion for summary judgment and denied Gurary's motion for summary judgment. The trial court held that although JCU had met its initial burden under Civ.R. 56(C), presenting evidence of specific facts showing that it was entitled to summary judgment on Gurary's claims, Gurary had not met his reciprocal burden of showing the existence of a genuine issue of material fact for trial. The trial court noted that Gurary had not supported his motion or opposition with an affidavit and that the trial court could not consider any of the attachments to his motion/opposition under Civ.R 56(C).

**{¶ 19}** Addressing each of Gurary's claims in turn, the trial court held that because the parties agreed that there was a valid, binding contract, "the allegation of Promissory Estoppel [was] not available" and JCU was, therefore, entitled to summary judgment on Gurary's promissory estoppel claim. The trial court held that JCU was entitled to summary judgment on Gurary's fraud claim because "there [was] no document, exhibits or evidence submitted" showing that JCU made "any false statements" or any statements "with utter disregard" upon which Gurary relied and, therefore, Gurary could not "prove an injury caused by . . . reliance o[n] a false statement."

**{¶ 20}** With respect to Gurary's breach-of-contract claim, the trial court stated that "the [p]arties are bound by the terms of the Faculty Handbook, which

only addresses the salaries of tenured employees," and that Gurary, "as a non-tenured employee," was, therefore, "subject to any salary adjustments at the discretion of JCU." The trial court further held that "[r]easonable minds can come to only one conclusion" regarding the "retention bonuses" paid to Gurary, i.e., that "[t]he retention bonuses paid to Dr. Gurary was for the purpose of making him whole from the salary reduction imposed during the 2020-21 academic year" and that since the two bonus payments "totaled the amount that the salary was reduced," the payments "made Dr. Gurary whole" and "satisf[ied] the terms of the contract" such that "the terms of the contract between Dr. Gurary and JCU have been fulfilled."

{¶ 21} Although trial court stated that it did "not need to address the issue of whether JCU was ever in breach of the contract since Dr. Gurary suffered no damages," the trial court, nevertheless, concluded that Gurary "presented insufficient evidence" that JCU breached the contract. "After construing the evidence most favorably to [Gurary]," the trial court found that there was no genuine issue of material fact and that JCU was entitled to judgment on all Gurary's claims as a matter of law. The trial court stated that "[a]ll other motions . . . have been considered by the Court and are deemed dismissed."

{¶ 22} Gurary appealed, raising the following five assignments of error for review:

1. The trial Court erroneously failed to consider the affidavit of Dr. Gurary.

2. The trial Court overlooked procedural defects in Defendant's filings in SJ proceedings, and failed to address deficiencies in Discovery, neglecting to rule on either.

3. The trial Court's judgment constitutes unjust enrichment.

4. The trial Court granted defendant a power to cut salaries without a contractual basis.

5. The trial Court failed to rule on the matter of liquidated damages.

{¶ 23} For ease of discussion, we address Gurary's assignments of error out of order and together where appropriate.

**Law and Analysis**

### Ruling on Summary Judgment Motions Without Addressing "Deficiencies in Discovery"

{¶ 24} We first address Gurary's claim, as part of his second assignment of error, that the trial court erred in ruling on JCU's motion for summary judgment without "address[ing] deficiencies in [d]iscovery" and allowing Gurary an opportunity to conduct additional discovery or "gather[]" "further evidence."

{¶ 25} If a party "'finds itself having to respond to a summary judgment motion before adequate discovery is completed'" or otherwise requires additional time to present evidence of facts necessary for his or her opposition to summary judgment, the party may seek relief under Civ.R. 56(F). *Commons at Royal Landing, LLC v. Whitehall*, 2016-Ohio-362, ¶ 8 (10th Dist.), quoting *Taylor v. XRG, Inc.*, 2007-Ohio-3209, ¶ 16 (10th Dist.). Gurary asserts that the following statements should have "triggered an extension" under Civ.R. 56(F): (1) his statement (in his response to JCU's motion for extension of time to comply with the

trial court's September 15, 2023 order regarding the production of salary information) that "[w]ith dispositive motions due in about six weeks, any delay in discovery could materially affect [his] preparation" and (2) his statement (in his December 1, 2023 motion requesting a hearing on his motion to compel) that he had "already been substantially prejudiced in preparation for summary judgment." We disagree.

{¶ 26} Civ.R. 56(F) provides:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 27} In other words,

Civ.R. 56[F] affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it. . . . Civ.R. 56(F) requires the opposing party to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition. Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion. If this is done, the trial court has several alternatives. It may refuse the application for summary judgment; it may order a continuance to permit affidavits to be obtained in opposition to the motion for summary judgment; it may grant a continuance for further discovery; or it may make such other order as is just. These are all within the trial court's discretion and are not mandatory.

*Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-169 (8th Dist. 1978);

*see also Prohazka v. Ohio State Univ. Bd. of Trustees*, 2004-Ohio-1601, ¶ 30-31

(10th Dist.) (where plaintiff did not submit a supporting affidavit, "[t]he trial court

was without authority to provide plaintiff with relief under Civ.R. 56(F)").

{¶ 28} Gurary did not file a motion for continuance pursuant to Civ.R. 56(F)

and did not submit an affidavit pursuant to Civ.R. 56(F) explaining his need for

additional discovery to obtain facts necessary to oppose JCU's summary judgment

motion. Instead, he filed his own motion for summary judgment.

{¶ 29} As the Tenth District explained in *Nationstar Mtge. LLC v. Payne*,

2017-Ohio-513, ¶ 16 (10th Dist.), a party who fails to seek relief in the trial court

under Civ.R. 56(F) based on a need for discovery fails to preserve the issue for

appeal:

> Generally, Civ.R. 56(F) provides the sole remedy for a party who must respond to a motion for summary judgment before it has completed adequate discovery. *Mootispaw v. Mohr*, 10th Dist. Franklin No. 15AP-885, 2016-Ohio-1246, ¶ 10; *Commons at Royal Landing, LLC v. Whitehall*, 10th Dist. Franklin No. 15AP-240, 2016-Ohio-362, ¶ 8. Pursuant to Civ.R. 56(F), a party may request that the trial court defer ruling on the motion for summary judgment pending the completion of discovery. *Mootispaw* at ¶ 10; *Commons at Royal Landing* at ¶ 9. When a party fails to move for a Civ.R. 56(F) continuance, a trial court may grant summary judgment to the moving party even if discovery remains incomplete. *Mootispaw* at ¶ 10; *Commons at Royal Landing* at ¶ 11. . . . [T]he party that fails to move for a Civ.R. 56(F) continuance does not preserve his right to challenge the adequacy of discovery on appeal. *Mootispaw* at ¶ 10.

*See also Haddad v. Maalouf-Masek*, 2024-Ohio-1983, ¶ 30-36 (8th Dist.) (Because

appellant did not seek relief under Civ.R. 56(F), trial court did not err in granting

appellee's motion for summary judgment even though appellant had not obtained the discovery she sought or planned to seek.); *Maschari v. Tone*, 2004-Ohio-5342, ¶ 20 ("'[A] party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve its rights thereto for purposes of appeal'"), quoting *Taylor v. Franklin Blvd. Nursing Home, Inc.*, 112 Ohio App.3d 27, 30 (8th Dist. 1996); *WFG Natl. Title Ins. Co. v. Meehan*, 2018-Ohio-491, ¶ 19 (8th Dist.) ("If an opposing party requires additional time to produce facts essential to the opposition motion, the party may seek a continuance under Civ.R. 56(F). . . . A party who fails to seek relief under Civ.R. 56(F) in the trial court fails to preserve the issue on appeal."); *Jackson v. Walker*, 2006-Ohio-4351, ¶ 17 (9th Dist.) ("A party needing evidence to oppose a motion for summary judgment, but 'who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve his rights under the rules for purposes of appeal.'"), quoting *R&R Plastics, Inc. v. F.E. Myers Co.*, 92 Ohio App.3d 789, 798 (6th Dist. 1993).

{¶ 30} Because Gurary did not seek relief under Civ.R. 56(F), the trial court did not err in ruling on the parties' summary judgment motions without first without "address[ing] deficiencies in [d]iscovery" and allowing Gurary an opportunity to conduct additional discovery or otherwise "gather[]" "further evidence."

{¶ 31} Accordingly, we overrule Gurary's second assignment of error to the extent it relates to the trial court's ruling on JCU's motion for summary judgment without "address[ing] deficiencies in [d]iscovery" and allowing Gurary an opportunity to conduct additional discovery or "gather[]" "further evidence." Based

on our resolution of Gurary's other assignments of error, the remainder of Gurary's second assignment of error is moot.

### The Trial Court's Failure to Consider Gurary's "Affidavit" When Ruling on the Parties' Motions for Summary Judgment

{¶ 32} In his first assignment of error, Gurary argues that the trial court erred in refusing to consider his "affidavit" and attached exhibits when ruling on the parties' motions for summary judgment.

{¶ 33} In support of his summary judgment motion, Gurary submitted a copy of document styled as an "affidavit" but which was not signed and did not contain a notarial certificate indicating that the written statements contained therein were made under oath or affirmation. In support of his opposition to JCU's motion for summary judgment, Gurary pointed to exhibits attached to this "affidavit."

{¶ 34} Civ.R. 56(C) provides, in relevant part, that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."[7] *See also* Civ.R. 56(E)

---

[7] Gurary has not argued on appeal that the trial court should have considered some or all of the documents at issue as part of the "pleadings" under Civ.R. 56(C) given that (1) the "affidavit" and exhibits were attached to and referenced in his amended complaint, (2) Civ.R. 10(D) required that a copy of the "written instrument" on which his claim was based be attached to his complaint and (3) JCU did not object to or challenge the authenticity of any of the documents attached to the amended complaint in its answer

("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.").

{¶ 35} Thus, the materials a party may use to support or oppose a motion for summary judgment are generally limited to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact. Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit. *Professional Bank Servs. v. Grossman DT, Inc.*, 2019-Ohio-2230, ¶ 10 (8th Dist.), citing *Dzambasow v. Abakumov*, 2005-Ohio-6719, ¶ 26 (8th Dist.). Submitted documents that have not been sworn, certified or authenticated by affidavit, in accordance with Civ.R. 56(C) and (E), generally have no evidentiary value and need not be considered by the trial court in ruling on a summary judgment motion. *See, e.g., Wolk v. Paino*, 2011-Ohio-1065, ¶ 26 (8th Dist.). Further, "'[w]hile a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, there is no requirement that a court do so.'" *Mentch v. Cuyahoga Cty. Pub. Library Bd.*, 2018-Ohio-1398, ¶ 53, quoting *Wolk v. Paino,* 2010-Ohio-1755, ¶ 28 (8th Dist.). "'Inadmissible affidavits are no different from

and, instead, acknowledged that the documents "speak for themselves." Accordingly, we do not address that issue here.

inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if he elects to consider them and no objection is made.'" *Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90 (8th Dist. 1978), quoting *United States v. Dibble*, 429 F.2d 598, 603 (9th Cir. 1970) (Wright, J., concurring); *see also Ma v. Gomez*, 2023-Ohio-524, ¶ 3, fn. 1 (8th Dist.).

{¶ 36} Gurary asserts that "[b]y overlooking [his] properly submitted affidavit, the trial [c]ourt failed to adhere to procedure" and that this "procedural error" "significantly prejudiced" Gurary, "effectively denying him the opportunity to present his case." Gurary's "affidavit" was not, however, a "properly submitted affidavit" under Civ.R. 56(C) and (E).

{¶ 37} An affidavit is "a written declaration under oath, made without notice to the adverse party." R.C. 2319.02. To constitute a valid affidavit, the statement must be signed by the affiant and notarized. *See, e.g., Ma* at fn. 1 (discussing proper form of an affidavit); *Rababy v. Metter*, 2015-Ohio-1449, ¶ 10 (8th Dist.), citing *Rarden v. Dept. of Rehab. & Corr.*, 2012-Ohio-5667, ¶ 29 (10th Dist.) ("Although plaintiff responded with what purported to be an affidavit, it was not notarized and therefore did not qualify as an affidavit or any other form of evidence permitted under Civ.R. 56(C)."); *Humphrey v. Ohio Water Parks*, 97 Ohio App.3d 403, 404-405 (9th Dist. 1994) ("The general rule is that an affidavit must appear on its face to have been taken before the proper officer, and in compliance with all legal requisitions. . . . A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit. . . . '[I]t can only be regarded as the mere draft

of an affidavit, never sworn to by the person by whom it purports to have been made.'"), quoting *Benedict v. Peters*, 58 Ohio St. 527, 536-537 (1898); *see also Toledo Bar Assn. v. Neller*, 2004-Ohio-2895, ¶ 24 (writing that purported to be signed under penalty of perjury may not be substituted for an affidavit; "only a written declaration made under oath before a proper officer qualifies as an 'affidavit'").

{¶ 38} Here, the trial court did not err or abuse its discretion in refusing to consider Gurary's unsigned, unnotarized "affidavit" when ruling on the parties' summary judgment motions. Gurary's first assignment of error is overruled.

**Trial Court's Ruling on Summary Judgment**

{¶ 39} In his third, fourth and fifth assignments of error, Gurary contends that the trial court erred in concluding that JCU was entitled to summary judgment on his breach-of-contract, promissory estoppel and fraud claims.

**Standard of Review**

{¶ 40} We review summary judgment rulings de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We accord no deference to the trial court's decision and we conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 41} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is

adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *Id.* On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

**Gurary's Promissory Estoppel Claim**

{¶ 42} "'Promissory estoppel is an equitable doctrine that comes into play when the requisites of contract are not met, yet a promise should be enforced to avoid injustice.'" *Prime Invs., LLC v. Altimate Care, LLC*, 2022-Ohio-1181, ¶ 35 (10th Dist.), quoting *APCO Indus. v. Braun Constr. Group., Inc.*, 2020-Ohio-4762, ¶ 60 (10th Dist.), citing *Olympic Holding Co., L.L.C. v. Ace Ltd.*, 2009-Ohio-2057, ¶ 39-40. Promissory estoppel is "inconsistent with the existence of an express written contract." *Warren v. Trotwood-Madison School Dist. Bd. of Edn.*, 1999 Ohio App. LEXIS 1035, *19 (2d Dist. Mar. 19, 1999). "'Thus, the existence of an enforceable express contract between the parties bars recovery under a promissory estoppel claim.'" *12100 Buckeye Ltd. v. Council for Econ. Opportunities in Greater Cleveland*, 2021-Ohio-4517, ¶ 29 (8th Dist.), quoting *Americana Invest. Co. v. Natl. Contr. & Fixturing, L.L.C.*, 2016-Ohio-7067, ¶ 13 (10th Dist.); *see also Pagano v.*

*Case W. Res. Univ.*, 2021-Ohio-59, ¶ 78 (8th Dist.) ("The existence of an express contract precludes a claim of . . . promissory estoppel."); *APCO Indus.* at ¶ 60 ("[A] plaintiff cannot recover for promissory estoppel where the promise forming the basis of that claim is contained within an express written contract."). Here, an express, written contract existed between Gurary and JCU covering the matters at issue. Therefore, Gurary could not prevail on his promissory estoppel claim, and the trial court properly granted summary judgment in favor of JCU on that claim.

**Gurary's Fraud Claim**

{¶ 43} To prevail on his fraud claim against JCU, Gurary needed to establish the following elements: (1) a representation of fact (or concealment of a fact where there is a duty to disclose); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment) and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984). In his amended complaint, Gurary alleged that JCU knowingly misrepresented its "financial health," including by claiming "an immediate threat of financial exigency" when no such threat existed and misrepresenting the need for and scope of the salary cuts. Gurary further alleged that JCU's "misleading and false claims . . . directly impaired his ability to make informed decisions about his career and future." Following a thorough review of the record, we conclude that the trial court correctly determined that no summary

judgment evidence was presented that (1) JCU's statements regarding its financial condition were knowingly false or made with "utter disregard and recklessness" as to their truth or (2) Gurary justifiably relied on any such representations and was injured by that reliance.

{¶ 44} Accordingly, the trial court did not err in granting summary judgment in favor of JCU on Gurary's fraud claim.

**Gurary's Breach-of-Contract Claim**

{¶ 45} To prevail on a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant and (4) resulting damages to the plaintiff. *See, e.g., FedEx Corp. Servs. v. Brandes Internatl. Co.*, 2020-Ohio-3449, ¶ 16 (8th Dist.); *Osborn Engineering Co. v. K/B Fund IV Cleveland, L.L.C.*, 2011-Ohio-348, ¶ 10 (8th Dist.).

{¶ 46} JCU contends that it was permitted, under the terms of its contract with Gurary, to reduce Gurary's salary because the contract incorporates, by reference, JCU's faculty handbook. Referencing pages 22 and 23 of the faculty handbook, JCU asserts that the handbook "permits the University to reduce salaries of non-tenured faculty regardless of the financial condition of the university." Pages 22 and 23 are part of section IV.K. of the faculty handbook. Section IV of the faculty handbook is titled, "Tenure." Section IV.K., the only provision in that section of the handbook that relates to salaries, and the only section presented, states:

> Tenured appointments are held continuously in accordance with the provisions of this Handbook, and such appointments are not contingent upon issuance of annual renewals or contracts. Members of

the Faculty who have tenure are notified in writing at normal contract issuance time about salaries, changes in rank, and other conditions of service for the next Academic Year. They are expected to give written response within six weeks after such notification. In no case shall the rank of a tenured Faculty member be reduced, nor shall the salary of a tenured Faculty member be reduced except as part of a general reduction of salaries to avoid reaching the point of financial exigency.[8]

{¶ 47} JCU argues that because section IV.K. addresses only the salaries of tenured employees, Gurary, as a nontenured employee, was subject to any salary adjustments JCU chose to implement. We disagree.

{¶ 48} Section IV.K., by its terms, addresses only salary reductions of *tenured* faculty members. As such, it did not apply to Gurary, a nontenured faculty member. Gurary, unlike tenured professors whose appointments were "not contingent upon the issuance of annual renewals or contracts," had an annual contract with JCU that set forth the terms and conditions of his employment, including his salary. There is nothing in pages 22 or 23 of the faculty handbook (or otherwise in the record) that permits JCU to unilaterally reduce Gurary's annual salary after it had been agreed to as part of his contract with JCU.

{¶ 49} JCU also argues that the trial court properly granted summary judgment in its favor on Gurary's breach-of-contract claim because JCU issued two supplemental payments to Gurary that totaled the amount by which his salary was reduced in the 2020-2021 academic year. Therefore, JCU contends, the terms of the contract between Gurary and JCU have been "fulfilled," and Gurary suffered no

_____

[8] This paragraph is followed by a footnote, footnote 19, that states "See Appendix I.6 for an interpretation of Faculty Handbook." That appendix provision was not included with JCU's summary judgment materials.

damages as a result of the salary reduction — an essential element of a breach-of-contract claim. Once again, we disagree.

{¶ 50} Although JCU contends that the bonus payment "satisf[ied] the terms of the contact," JCU expressly stated in a letter to Gurary that the "retention bonus payment" "did not represent payment for hours worked." Furthermore, the "retention bonus payment" was given only to employees who continued to work for JCU after September 30, 2021 — not to all employees affected by the salary reductions. If Gurary had not continued to work for JCU after September 30, 2021, he would have not received the "retention bonus payment."

{¶ 51} In addition, the contract required that Gurary be paid his salary "in twelve equal payments on a monthly basis." (Emphasis deleted.) The first "retention bonus payment" of $3,475.26 was not made until September 30, 2021 and the "supplemental bonus payment" of $1,494.74 was not made until sometime after May 2023 — long after the $4,790 was due Gurary under the terms of the contract. It cannot be said that Gurary suffered no harm as a result of the delay in payment of a portion of his salary.

{¶ 52} Gurary also contends that the trial court erred in failing to consider his claim for liquidated damages under R.C. 4113.15(B). R.C. 4113.15(B) provides:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is

liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

{¶ 53} Gurary argues that even if he was "made whole" for his unpaid salary in 2020 by the payment of the retention bonus, it was undisputed that "payment in full was not rendered until May 2023" and that this delay "warrants liquidated damages under [R.C.] 4113.15(B), due to the statutory mandate for timely wage payment." JCU has not disputed that this statute applies to any untimely payment of wages due Gurary.[9]

{¶ 54} Based on the record before us, the trial court erred in granting summary judgment in favor of JCU on Gurary's breach-of-contract claim. We sustain Gurary's fourth and fifth assignments of error. Based on our resolution of those assignments of error, Gurary's third assignment of error is moot. Case remanded for further proceedings on Gurary's breach-of-contract claim, including his request for liquidated damages under R.C. 4113.15(B).

{¶ 55} Judgment affirmed in part; reversed in part; remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution.

---

[9] JCU does not address R.C. 4113.15(B) in its appellate brief other than to state that "because the trial court found that JCU did not breach the contract, the trial court was not required to rule on liquidated damages."

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR