JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, Brahim Ayad and Michael Troy Watson, d.b.a. Politically Damned Talk Radio, appeal from a March 17, 2006 judgment of the Cuyahoga County Court of Common Pleas, granting the motion for summary judgment of appellee, Radio One, Inc. ("Radio One").
 {¶ 2} On September 10, 2004, appellants filed a complaint against Radio One and six other defendants, for breach of contract, violation of their right to free speech, tortious interference with their right to contract, libel and/or slander, breach of practice or custom, discrimination by race, religion, and/or political ideology, and conspiracy to harm.[1] Simultaneously, appellants filed a motion for temporary restraining order, commanding their immediate return to the airways at WERE in the time previously allotted to their program. The trial court denied appellants' motion for a temporary restraining order on September 16, 2004.
 {¶ 3} On October 12, 2004, defendants removed the case to the United States District Court for the Northern District of Ohio, Eastern Division. However, on July 19, 2005, the federal district court granted defendants' motion for judgment on the pleadings with respect to all federal claims. It further dismissed the remaining state claims for lack of subject matter jurisdiction and remanded the case to the Cuyahoga County Court of Common Pleas. *Page 3 
 {¶ 4} On August 31, 2005, defendants filed a motion for judgment on the pleadings, which the trial court granted in part, and denied in part, on November 23, 2005. It granted judgment to all defendants, except for Radio One, and granted judgment on all of appellants' claims, except for their breach of contract claim.
 {¶ 5} Radio One filed a motion for summary judgment on February 8, 2006 and appellants filed their motion for summary judgment on February 24, 2006. On March 17, 2006, the trial court denied appellants' motion for summary judgment and granted judgment as a matter of law to Radio One.
 {¶ 6} It is from this judgment which appellants appeal, raising the following five assignments of error:
 {¶ 7} "[1.] The trial court erred in granting [Radio One's] motion for summary judgment contrary to the law of summary judment and the facts at issue in the case for reasons including, that outstanding issues of material fact remained unresolved
 {¶ 8} "[2.] The trial court erred in denying [appellants'] first motions to compel and then granted [Radio One's] motion for summary judgment in spite of their refusal to comply with discovery, including interrogatory response, production of documents and/or deposition appearance.
 {¶ 9} "[3.] The trial court erred in granting [Radio One's] motion for judgment on the pleadings as to dismissed defendants * * *. *Page 4 
 {¶ 10} "[4.] The trial court erred in denying [appellants'] second and third motions to compel and then granting [Radio One's] motion for summary judgment in spite of their refusal to comply with discovery, including interrogatory response, production of documents and/or deposition appearance.
 {¶ 11} "[5.] The trial court erred in granting summary judgment overruling the law of the case' as the trial court had previously determined that the case `would go to the jury' in the court's temporary restraining order ruling and overruled [defendants'] motion for judgment on the pleadings finding that [* * *] `Plaintiffs case may proceed against the defendant, Radio One, Inc., only and under the breach of contract claim only.'"[2]
 {¶ 12} In their first assignment of error, appellants present three issues for our review. They maintain that the trial court erred in granting summary judgment to Radio One when if found that Radio One did not breach an oral agreement between the parties, a written agreement, or breach the custom and practice between the parties.
 {¶ 13} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from *Page 5 
the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
 {¶ 14} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.) If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 15} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741. Furthermore, a motion for summary *Page 6 
judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 16} In the case sub judice, it is undisputed that Radio One and Ayad entered into a written contract on September 3, 2003, where Ayad paid for airtime on WERE to broadcast a radio-talk show, Politically Damned.[3] The contract was titled: "WERE — AM TIME BROKERED CONTRACT." Under the contract, Ayad was identified as the "time broker."[4]
 {¶ 17} Paragraph one of the agreement stated:
 {¶ 18} "In consideration of the Weekly Net Sum of $200.00, Radio One, Inc. agrees to sell and Time Broker agrees to buy the Friday, 10:00pm-11:00pm segment of available airtime on the Station with weekly payment due each day of broadcast beginning September 5th, 2003 for a period of 52 weeks (see section 14). The Station reserves the right to change program times with reasonable notice. All sales are subject to terms and conditions set forth below."[5]
 {¶ 19} The final paragraph of the contract further provided: *Page 7 
 {¶ 20} "This agreement may not be changed, altered, or modified except in writing. The only persons authorized to alter the terms of this agreement on behalf of Radio One, Inc. and WERE are the Station Manager of WERE, the General Manager and the Operations Manager of Radio One Cleveland."
 {¶ 21} It is also undisputed that appellants orally purchased additional hours of airtime per week from Radio One. Initially, Politically Damned aired for one hour per week, every Friday, from 10:00 p.m. to 11:00 p.m. On October 24, 2003, appellants purchased an additional hour per week, on Friday evenings, from 11:00 p.m. to 12:00 a.m. On March 19, 2004, they purchased another hour per week, from 9:00 p.m. to 10:00 p.m., every Friday. Thus, appellants' show was then on the air each Friday, from 9:00 p.m. to midnight. Finally, on May 25, 2004, appellants purchased the 11:00 p.m. to 12:00 a.m. time period every Monday through Thursday, for a total of seven hours of airtime per week.
 {¶ 22} Appellants aired their final broadcast on Friday, September 3, 2004. On Monday, September 6, 2004, Bevins notified appellants that WERE was not renewing their contract. Appellants had already paid $1800 in advance for two weeks of programming, from September 6, 2004 through September 17, 2004. Radio One returned the check to appellants on September 9, 2004.
 {¶ 23} In their first issue presented, appellants claim that the written contract between Ayad and Radio One, entered into on September 3, 2003, was orally *Page 8 
modified. They contend that the original contract's expiration date did not apply and that the modified agreement did not have an expiration date.
 {¶ 24} It has long been established that contracts may be written or oral. Eckliff v. Walters, 168 Ohio App.3d 727, 2006-Ohio-4817, at _22. It is also well settled that written contracts may be orally modified or modified by subsequent acts. Wilhelmy v. 15201 Detroit Corp. (June 5, 1997), 8th Dist. No. 71290, 1997 Ohio App. LEXIS 2442, at 10, citingSmaldino v. Larsick (1993), 90 Ohio App.3d 691, 698. However, "[t]he general rule is that a written contract may be orally amended if the oral amendment has the essential elements of a binding contract."Carrocce v. Shaffer (Oct. 31, 1997), 11th Dist. No. 96-T-5521, 1997 Ohio App. LEXIS 4845, at 9, citing Richland Buildings, Inc. v. Thome, etal. (1950), 88 Ohio App. 520, 527.
 {¶ 25} The necessary elements of a valid contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration. Id. at _23, citing Kostelnik v. Helper,96 Ohio St. 3d 1, 2002-Ohio-2985, at _16. It is imperative that there was a "meeting of the minds" as to the essential terms of the agreement. Id.
 {¶ 26} Appellants allege that "the first modification of the original agreement occurred" when the contract was "rewritten and assigned a new contract number on or about January 30, 2004." Appellants contend that "even dismissed *Page 9 
defendant/appellee Bevins acknowledges that more than one contract existed," citing numerous portions of Bevins' deposition testimony.
 {¶ 27} Radio One maintains, however, that the original contract was never modified, and that each time appellants purchased more airtime, it was under the umbrella of the original Time Broker Contract. Radio One concedes that two different contract numbers existed on documents that were sent to appellants, but claims they were mere accounting issues that did not alter the original contract.[6]
 {¶ 28} Radio One originally sent Ayad documents, labeled either "sales order" or "invoice," summarizing the airtime Ayad had purchased, which had a contract number of 710380. Beginning on January 30, 2004, and throughout the remainder of the parties' relationship, Ayad was sent documents were labeled "Broadcast Contract," which had a different contract number of 7100526.
 {¶ 29} Bevins and Glover testified in their depositions that these documents originated from Radio One's Marketron system. They both explained that Marketron is the station's accounting and scheduling software program that automatically assigns a contract number to an invoice or sales order, which is then sent to clients. *Page 10 
 {¶ 30} They both further stated that the Marketron program is typically used for advertisers, not time brokers. Bevins said that the Marketron does not have the correct terminology for time brokers, and that is why they use a separate time-broker agreement. However, he agreed that documents created in Marketron are sent to both advertisers and time brokers, so they have a record of the airtime purchased.
 {¶ 31} Glover explained that time-broker contracts do not have a contract number.[7] He also stated that the contract numbers on the documents sent to Ayad were automatically generated by Marketron and were simply for "traffic and billing purposes."
 {¶ 32} Both Bevins and Glover described why appellants were sent documents that had a new contract number on them. Their testimony was consistent that appellants had a late payment on January 30, 2004. When this happens, they said that Marketron does not allow additional data to be put in the system, unless a new contract number is generated. Both explained that it did not mean that a new contract was created, but that it was a modification of the sales order between the parties.
 {¶ 33} Appellants argue that other factors, in addition to two contract numbers, lead them to believe there was a new agreement. They assert that a new contract *Page 11 
existed because new terms and conditions were set forth on the back of the Broadcast Contract that was sent to them.
 {¶ 34} On the back of the Broadcast Contract, it states "Sales Agreement: Terms and Conditions." Appellants allege that under section number two, termination, Radio One was required to give them fourteen days prior notice before terminating the contract. This provision states: "[e]ither party may terminate this Agreement, without cause, upon giving the other party at least 14 days prior notice * * *." It further provides: "[s]tation may, effective upon notice to Advertiser or Agency, terminate this [agreement at any time upon material breach by Advertiser or Agency
 {¶ 35} Bevins explained in his deposition that the terms and conditions only applied to advertisers. Indeed, a review of the terms and conditions supports Bevins' testimony. It repeatedly refers to the parties as "Advertiser or Agency" and the "Station." Under the first section, billing and payment, it states that "[p]ayment is due by Advertiser or Agency within 30 days of the billing date as set forth on the invoice. * * *" That was not the case with appellants, who all agree, had to pay in advance, or Politically Damned would not have aired.
 {¶ 36} Bevins does admit that on the front of the Broadcast Contract, it identifies Ayad as the advertiser. However, he explained that Ayad was a time *Page 12 
broker, not an advertiser. In order to input data into Marketron, which was designed for the station's advertisers, they had to identify Ayad as the advertiser.[8]
 {¶ 37} The portions of the transcript which appellants point to in support of their proposition that Bevins repeatedly acknowledged that two contracts existed, are taken out of context. Bevins consistently states, throughout three days of deposition testimony, that there were modifications of additional airtime sales, as well as changes to the schedule, but never to the terms and conditions of the original agreement. He further explains that the purchase of the additional time was under the umbrella of the original contract and that the original terms and conditions still applied, including the expiration date.
 {¶ 38} After a review of the evidence in the record, we agree that there is no genuine issue of material fact as to whether the original contract was revoked or modified. The Time Broker Contract states in the first paragraph that "[t]he Station reserves the right to change program times with reasonable notice." It further provides that "[a]ll sales are subject to the terms and conditions set forth below." Later in the agreement, it also refers to additional time purchased, stating in paragraph three, "[t]ime broker agrees that, with respect to any given segment of airtime purchased * * *." In paragraph fourteen, it also refers to "[t]his one year agreement * * *." *Page 13 
 {¶ 39} Thus, it is apparent from the face of the written contract that the parties contemplated the fact that additional airtime may be purchased by the time broker, and if so, the sales would be subject to the terms and conditions set forth in the original agreement. Further, Bevins' and Glover's testimony corroborated the fact that the additional sales of airtime were also subject to the original terms and conditions of the contract. No genuine issue of material fact exists as to whether an oral agreement existed, such that it nullified the original terms of the contract. Appellants' first issue has no merit.
 {¶ 40} In their second issue presented, appellants maintain that Radio One breached the written agreement between them and Ayad.
 {¶ 41} In this argument, appellants allege that Radio One breached the written Broadcast Contract, not the Time Broker Contract. Although not entirely clear, it seems appellants claim that Radio One violated the terms and conditions listed on the back of the Broadcast Contract.
 {¶ 42} However, we already determined from reviewing the document, as well as Bivens' and Glover's testimony, that terms and conditions on the back of the Broadcast Contract only applied to advertisers or advertising agencies. Appellants were time brokers, not advertisers. Thus, there is no genuine issue of material fact regarding this issue and appellants' second issue is without merit.
 {¶ 43} In their third issue, appellants maintain that Radio One breached the custom and practice which existed between the parties. Specifically, they allege that *Page 14 
because they paid two weeks in advance throughout the duration of the contract, which added weeks of programming to the schedule, that Radio One breached their agreement when it cancelled Politically Damned without notice.
 {¶ 44} Parties' conduct and declarations, evidenced by the surrounding circumstances, can be sufficient to show a meeting of the minds that the parties intended to create binding obligations. Alliant Food Services,Inc. v. Powers, 8th Dist. No. 351088, 2003-Ohio-4193, at _27. However, if the minds of the parties have not met, then no contract has formed. Id. at _26.
 {¶ 45} Ayad signed the Time Broker Contract requiring him to pay "each day of broadcast." However, it was undisputed that almost from the beginning of the relationship, Ayad paid two weeks in advance. Nevertheless, this does not alter the fact that the parties had an agreement for fifty-two weeks (paragraph one) or one-year (paragraph fourteen). Customarily paying two weeks in advance does not extend the length or duration of the original, written contract. In addition, there was no language in the contract which provided for automatic renewal or rollover of the contract. As such, no genuine issue of material fact exists and appellants' third issue does not have merit.
 {¶ 46} Having determined that all three issues lack merit, appellants' first assignment of error is not well taken.
 {¶ 47} In their second and fourth assignments of error, appellants argue that the trial court erred with respect to their motions to compel. First, they argue that the *Page 15 
trial court erred when it denied their first motion to compel, and then granted summary judgment to Radio One. Secondly, they argue that the trial court erred in not granting their second and third motions to compel, and then granted summary judgment for Radio One.
 {¶ 48} The standard of review of a trial court's decision in discovery matters is whether the court abused its discretion. Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, 592. Abuse of discretion connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, 47, citing Pembaur v. Leis (1982), 1 Ohio St.3d 89, 91.
 {¶ 49} It is unclear as to what appellants are referring to when they say "first motion to compel," since none of the motions was labeled "First Motion to Compel." However, they do claim that the trial court issued its decision in this matter without them "having the opportunity to cross-examine key witnesses of a central element within the case." We interpret their argument to mean that since they did not get to depose Hughes and Hamilton (which is the subject of both of their Second and Third Motions to Compel), they assert that the trial court erred in granting summary judgment.
 {¶ 50} After reviewing the record, we cannot conclude that the trial court abused its discretion. Appellants filed seven motions to compel from November 17, 2005 until February 24, 2005. Within that same time frame, Radio One filed *Page 16 
numerous motions, requesting protective orders from the court to preclude the depositions of Hughes and Hamilton. Hughes and Hamilton were originally named defendants in the suit. However, the trial court dismissed them in November 2004, when it granted, in part, defendants' judgment on the pleadings. Thus, they were no longer parties to the suit.
 {¶ 51} During this same time frame, appellants deposed Bevins and Glover. Their testimony showed that Bevins made all of the decisions with respect to WERE. It further showed that Hughes, who was Chairperson of the Board and Secretary of Radio One, knew little or nothing about the day to day activities of WERE. Hamilton, Vice President in Charge of Operations of Radio One and supervisor to Bevins, knew that Bevins did not want to renew Ayad's contract, but did not advise him in any way regarding the matter, except to refer him to Valardo, Chief Counsel of Radio One.
 {¶ 52} Thus, the trial court did not abuse its discretion when it failed to order Hughes and Hamilton to appear for depositions. The trial court had sufficient evidence upon which to grant or deny summary judgment. We cannot conclude that it abused its discretion.
 {¶ 53} In its third assignment of error, appellants claim that the trial court erred when it granted judgment on the pleadings and dismissed all defendants except for Radio One. They contend that the trial court erred "in making this determination as a matter of law based on the facts that had been presented when it dismissed the *Page 17 
claims of these dismissed Defendants/Appellees." However, neither this court, nor the trial court, can look to the facts that had been developed in the case on a motion for judgment on the pleadings.
 {¶ 54} The standard of review of the grant of a motion for judgment on the pleadings is the same as the standard of review for a Civ. R. 12(B)(6) motion. As the reviewing court, our review of a dismissal of a complaint based upon a judgment on the pleadings requires us to independently review the complaint and determine if the dismissal was appropriate. Rich v. Erie County Department of Human Resources (1995),106 Ohio App.3d 88, 91. A reviewing court need not defer to the trial court's decision in such cases. Id. In considering such a motion, one must look only to the face of the complaint. Nelson v. Pleasant (1991),73 Ohio App.3d 479, 597.
 {¶ 55} Appellants filed claims against defendants for breach of contract, violation of their right to free speech, tortious interference with their right to contract, libel and/or slander, breach of practice or custom, discrimination by race, religion, and/or political ideology, and conspiracy to harm. After remand from the Northern District Court of Ohio, the only remaining state claims were breach of contract, tortious interference with plaintiffs' right to contract, libel and slander, breach of practice and custom and conspiracy to harm. The trial court did not grant judgment on the pleadings with respect to the breach of contract claim. It did, however, dismiss all defendants except for Radio One. *Page 18 
 {¶ 56} With respect to the breach of contract claim and the trial court's dismissal of all defendants except for Radio One, we conclude the trial court did not err. The Time Broker Contract was not signed by a corporate officer in his or her individual capacity. The signature line on the contract states that the station manager signed it, "For: Radio One, Inc." Generally, corporate officers are not individually liable on a breach of contract claim unless they personally signed the contract in their individual capacity. Spicer v. James (1985),21 Ohio App.3d 222, 223. Here, none of the defendants signed the contract in their individual capacity, but "For: Radio One, Inc." Thus, the trial court did not err with respect to dismissing all defendants except Radio One on the breach of contract claim.
 {¶ 57} The trial court granted judgment on the pleadings against all defendants on the remaining state claims: tortious interference with plaintiffs' right to contract, libel and slander, breach of practice and custom and conspiracy to harm. Thus, the trial court found that plaintiffs failed to state a claim with respect to each one.
 {¶ 58} A review of the elements of each of these claims does not reveal any error on the part of the trial court, since appellants did not allege sufficient facts in their complaint to maintain these causes of action. As such, appellants' third assignment of error is not well taken.
 {¶ 59} In their final assignment of error, appellants contend that the trial court did not follow the "law of the case" because it granted summary judgment after it *Page 19 
had determined that the case would go to the jury on the breach of contract claim. This argument has no merit.
 {¶ 60} In Hopkins, N.K.A., Peterson v. Dyer, 104 Ohio St.3d 461,2004-Ohio-6769, at _15, the Supreme Court of Ohio stated:
 {¶ 61} "The law of the case is a longstanding doctrine in Ohio jurisprudence. `The doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan [1984], 11 Ohio St.3d. [1,] 3 * * *. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. State ex rel. Potain v. Mathews (1979), 59 Ohio St.2d 29,32 * * *."
 {¶ 62} The trial court's ruling on a motion for judgment on the pleadings was not a decision of a reviewing court. Thus, appellant's fifth assignment of error is overruled.
 {¶ 63} Accordingly, appellants' five assignments of error are not well taken. The judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were no reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 20 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY E. KILBANE, P.J. and PATRICIA A. BLACKMON, J. CONCUR
[1] The other defendants named were WERE Radio 1300 AM ("WERE"), Catherine L. Hughes, Chairperson of the Board and Secretary of Radio One, Carl Hamilton, Vice President in Charge of Operations of Radio One, David Bevins, Corporate Executive of Radio One and WERE, Bill Glover, Sales Manager of Radio One and WERE, and John Doe.
[2] Plaintiffs presented six other assignments of error in their brief, numbered six through eleven. However, plaintiffs did not argue them or put forth any reasons or authority in support of these assignments, as required by App.R. 16(7). As such, we will not address them.
[3] Appellant Watson was not a party to the contract.
[4] A time broker pays the radio station a fee for the right to broadcast a program for a set period of time.
[5] The parties agree that according to the Time Broker Contract, Ayad was required to pay each week, with payment due "each day of broadcast." Nevertheless, it was evident from the testimony of Watson and William Glover, WERE's Account Executive/Account Manager, that almost from the beginning of the contract, Ayad paid for the programming two weeks in advance, and that is what was expected of him.
[6] Radio One further argues that when a document is clear and unambiguous, parole evidence is not permitted to contradict the contract terms. Under Ohio law, the parol evidence rule forbids the use of an oral or written statement made before or at the time a written contractis entered to vary that contract. Galmish v. Cicchini (2000),90 Ohio St.3d 22, 27. However, this rule does not apply to a later oral modification of the contract. Uebelacker v. Cincom Systems, Inc. (1988),48 Ohio App.3d 268, 549, paragraph three of the syllabus. Thus, the parole evidence rule does not apply here.
[7] It is significant to note that the actual Time Broker Agreement did not have a contract number assigned to it.
[8] Appellants do not claim that they ever believed that Ayad was an advertiser. *Page 1