[Cite as *Absolute Resolutions Invests., L.L.C. v. Moran*, 2025-Ohio-2999.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| ABSOLUTE RESOLUTIONS INVESTS, LLC | : | C.A. No. 2025-CA-1 |
| | : | |
| Appellee | : | Trial Court Case No. 23 CV 333 |
| | : | |
| v. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| ERIN ELISE MORAN | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 22, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MARY K. HUFFMAN, JUDGE

EPLEY, P.J., and HANSEMAN, J., concur.

**OPINION**
MIAMI C.A. No. 2025-CA-1

ANDREW R. BARNES, Attorney for Appellant
W. ANDERSON WOODFORD & PATRICK D. NEWMAN, Attorneys for Appellee

HUFFMAN, J.

**{¶ 1}** Defendant-Appellant Erin Elise Moran appeals from the trial court's summary judgment in favor of Plaintiff-Appellee Absolute Resolutions Investments, LLC (ARI) on ARI's action on account claim and on her counterclaims. First, Moran argues that the trial court erred by failing to construe the evidence in her favor when ruling on each party's motion for summary judgment, citing various alleged problems with ARI's documentary evidence. Moran also contends that the trial court impermissibly engaged in credibility determinations and weighed evidence when it determined that an expert's report was of questionable weight and that Moran's testimony lacked credibility. Finally, Moran argues that the trial court erred in denying her motion to compel arbitration. For the reasons outlined below, we affirm the judgment of the trial court.

## I.      Background Facts and Procedural History

**{¶ 2}** In February 2019, Moran contracted with U.S. Bank to open a credit card account. For a period of time, she used the account and made payments, eventually incurring a balance of $11,218.08. After May 25, 2022, she stopped paying on the account as required, and on January 31, 2023, U.S. Bank charged off the account for the balance of $11,218.08.

**{¶ 3}** On February 27, 2023, U.S. Bank sold ARI a portfolio of charged-off accounts, including Moran's, memorialized in a Bill of Sale and Assignment of Assets. The next day, U.S. Bank notified Moran that it had sold and transferred the account to ARI, and thus ARI

was the new owner of the account. ARI also notified Moran that it had purchased the account from U.S. Bank.

{¶ 4} In June 2023, ARI commenced an action against Moran in the Miami County Municipal Court to collect on the charged-off debt. Moran answered, denying liability. She also asserted counterclaims seeking damages in excess of $25,000 and moved to transfer the case to the common pleas court.

{¶ 5} In August 2023, the case was transferred to the Miami County Court of Common Pleas. Thereafter, Moran amended her answer and counterclaims, ultimately asserting counterclaims for violations of the Fair Debt Collection Practices Act (FDCPA) and the Consumer Sales Practices Act (CSPA) and common law claims of invasion of privacy, negligence, and negligence per se.

{¶ 6} Moran filed a motion to dismiss ARI's action on account claim for lack of standing, and the trial court ordered ARI to file particular documents to demonstrate standing. Subsequently, ARI filed a proof of claim, including affidavits and exhibits, to establish its standing.

{¶ 7} In February 2024, Moran filed a motion seeking dismissal of the case and an order compelling arbitration, which the trial court denied. It found that Moran had waived her right to arbitration by filing counterclaims exceeding the municipal court's jurisdiction and extensively participating in the litigation for several months before asserting a right to arbitration.

{¶ 8} ARI moved for summary judgment on its action on account claim and on Moran's counterclaims. As evidence, it provided the affidavit of Katey J. Redell, U.S. Bank Recovery Litigation Manager (Redell Affidavit); the affidavit of Charmaine Guglietta, ARI Service Support Specialist (Guglietta Affidavit); and the deposition transcript of Moran,

attached to the declaration of Patrick Newman, Attorney (Newman Declaration).

{¶ 9} In her memorandum opposing ARI's motion for summary judgment, Moran argued that the Redell and Guglietta Affidavits were inadequate and false and should have been disregarded and stricken from the record. She also provided her own evidentiary materials, including: the declaration of Brian P. Sullivan (Sullivan Declaration); the expert report of Sam Han, Ph.D. (Original Han Report); and a declaration and supplemental expert report of Han (Han Supplemental Declaration). The trial court consolidated both documents from Sam Han into the "Han Report" for its evaluation.

{¶ 10} Moran also moved for summary judgment on ARI's claim and on her counterclaims. She provided her own deposition testimony and the Original Han Report as evidence, as well as three affidavits previously filed by ARI and discussed in the Original Han Report and several other documents purportedly produced by ARI.

{¶ 11} The trial court engaged in an analysis regarding the consideration of certain evidentiary documents submitted by each party, including the Newman Declaration, the Sullivan Declaration, and the Han Report. It eventually concluded that the Newman Declaration would be considered because it was from an attorney representing ARI who attested to the authentication of Moran's deposition transcript. However, the trial court declined to consider the Sullivan Declaration and the Han Report, finding that neither declaration reflected that any oath or affirmation was made in front of a notary or comparable authority. For this and other reasons, it decided that these documents would not be considered proper evidence by the court.

{¶ 12} The trial court then addressed ARI's motion for summary judgment on the action on account claim. In considering the evidence, the trial court observed that Moran was not credible when she asserted that the account had been charged off and she had

been unsure of the balance due despite admitting to receiving a letter indicating the unpaid balance. The court concluded that Moran had known it was her account, had paid on it for years, had knowingly stopped payment, and then had contested whether she owed the balance alleged without any evidentiary support that it was not owed.

{¶ 13} The trial court also considered the Redell and Guglietta Affidavits. The Redell Affidavit addressed the account and its assignment by U.S. Bank, the assignor, while the Guglietta Affidavit addressed the transaction from the perspective of ARI, the assignee. After considering both affidavits, the trial court found that the statements set forth in those affidavits, the exhibits attached thereto, and the cited deposition testimony from Moran were sufficient to meet ARI's initial burden on summary judgment regarding its action on account claim. Specifically, the trial court concluded that those materials established the existence of a contract between U.S. Bank and Moran establishing the account, the breach of the contract by Moran due to non-payment, the amount owed on the account, and the assignment of the account to ARI. Moran, however, objected to the court's consideration of those materials, arguing that the affidavits included false sworn statements made under penalty of perjury, were hearsay, and were not based on personal knowledge. She also contended that the documents were incomplete, could not be considered under Evid. R. 106, and were compilations offered without providing the underlying evidence in violation of Evid.R. 1006. In support of her arguments, Moran cited the Han Report and the Sullivan Declaration.

{¶ 14} The court reviewed each of Moran's objections and reiterated that it declined to consider the Han Report and the Sullivan Declaration, as neither was properly sworn before any individual authorized to administer oaths or notarized. In excluding statements from Han and Sullivan, the trial court found that there was no basis for their claims that the

documents under consideration were improperly manufactured or fabricated and suggested that the perjury arguments set forth by Han and Sullivan regarding the filtering of the Asset Schedule were disingenuous and bordered on unprofessional conduct. The trial court then considered whether the Redell and Guglietta Affidavits constituted inadmissible hearsay as alleged by Moran. It found that both affidavits properly authenticated the attached exhibits and established that the exhibits fell within the hearsay exception set forth at Evid. R. 803(6) for business records, and therefore could be considered by the court on summary judgment.

{¶ 15} Next, the trial court evaluated whether the Asset Schedule cited in the Redell and Guglietta Affidavits was incomplete and thus inadmissible under Evid.R. 106 because "information regarding other consumers and their accounts was filtered out to protect their privacy." Moran had argued that, because the affidavits stated that other consumers' information was filtered out, the Asset Schedule was incomplete and inadmissible. The trial court disagreed with Moran, finding that the evidence therein was admissible because Moran had not met her burden of showing that the additional or missing parts of the Asset Schedule (related to other consumers) were not only admissible but were also relevant to the part of the Asset Schedule pertaining to Moran's account in support of ARI's claim against her. Moreover, the court noted that Moran had not requested a motion to compel or an in-camera inspection of the other redacted consumer data from the Asset Schedule, and thus she could not argue that the entire Asset Schedule should be excluded. Finally, the trial court considered whether the Asset Schedule used by ARI to support its claim was an inadmissible "compilation," addressing Moran's argument that a "compilation" was permitted under Evid.R. 1006 only so long as the originals or duplicates of the original underlying information were made available for examination or copying. According to Moran, ARI was required to make its underlying computer records or the entire Asset Schedule available for

review. The trial court concluded that the Redell Affidavit, which was offered by an employee of U.S. Bank who authenticated the Asset Schedule printout as a true and accurate copy of the data held by the original creditor U.S. Bank, rendered the Asset Schedule an "original" document. The trial court reasoned that the Asset Schedule constituted an accurate printout of Moran's account information stored in a computer and thus was an original document, was not a summary, chart, or calculation of a voluminous writing subject to the requirements of Evid.R. 1006.

{¶ 16} Having found that Moran's objections to the Redell and Guglietta Affidavits lacked merit and that those affidavits could be considered by the trial court, the court found that ARI had met its initial burden on summary judgment as to its action on account claim against Moran, and that the burden then shifted to Moran to set forth specific evidentiary facts showing the existence of a genuine issue for trial.

{¶ 17} The trial court then considered Moran's opposition to ARI's summary judgment motion, including her objections to the court's consideration of the Redell and Guglietta Affidavits and the opinions offered by her experts, Han and Sullivan. The court reiterated that it found Moran's objections to the Redell and Guglietta Affidavits to be without merit and that those documents provided no legal or factual basis to deny ARI summary judgment as to its claim against her. The court further emphasized that it declined to consider the unsworn declarations of either Han or Sullivan. In so finding, the court concluded that Moran had not met her burden to set forth specific evidentiary facts showing the existence of a genuine issue for trial. Additionally, the court denied Moran's motion for summary judgment on ARI's claim, reasoning that ARI had demonstrated all elements required to prove the account, the amount owed on the account, and the assignment of the account. To the extent that Moran sought to again rely on her experts' declarations as evidence in her favor, the trial court

declined to consider those unsworn declarations. Accordingly, the trial court concluded that, even considering the evidence in a light most favorable to Moran, ARI had demonstrated that there were no genuine issues of material fact regarding its action on account claim and, thus, it was entitled to judgment as a matter of law.

{¶ 18} With respect to her counterclaims, Moran submitted her own deposition testimony, the Han Report, and the Sullivan Declaration. Based on that evidence, she claimed that ARI had: manufactured or fabricated documents; improperly offered incomplete documents; altered documents, rendering them irreconcilable; robo-signed documents; and offered a summary or compilation without providing the underlying originals. The trial court restated that the Han Report and Sullivan Declaration were not affidavits and were not properly sworn, declining to consider them on summary judgment. This left only Moran's testimony as evidence to support her counterclaims.

{¶ 19} The trial court found that Moran's testimony was insufficient to meet her burden of proof regarding her counterclaims; thus, she was not entitled to judgment as a matter of law for any violations of the FDCPA, the CSPA, or under any other theory of liability. According to the trial court, Moran's testimony did not describe any false or misleading conduct that could have served as a violation of any statute or common law duty. Moran testified that certain persons working as counsel for ARI were "exceptionally rude and yelled at her and things on the phone" and that she was "berated and verbally abused." However, the trial court pointed out that yelling and rude language do not by themselves violate the FDCPA. She also claimed that she placed calls to ARI's counsel to discuss the hold placed on her account but was advised that the hold prevented counsel from discussing the matter further with her. She complained that, as a result, counsel's communication with her was false or misleading and thus violated the FDCPA. The trial court concluded that counsel's

communication did not reflect a strategy to make payment from Moran more likely and therefore was not in violation of the FDCPA. Moran also testified that she did not receive letters from U.S. Bank providing her with notice of the assignment of her account to ARI until after she had been served with ARI's complaint. However, the trial court observed that there was no authority that either required her receipt of a letter prior to initiation of litigation by ARI or that made ARI responsible under the law for any delay in the issuance of delivery of the letter by either U.S. Bank or the postal service. The trial court, therefore, concluded that Moran's testimony could not serve as the basis of liability under either statutory or common law and denied her motion for summary judgment as to her counterclaims.

{¶ 20} Finally, the trial court considered ARI's motion for summary judgment as to Moran's counterclaims for violations of the FDCPA and CSPA and for common law claims for invasion of privacy, negligence, and negligence per se. Moran alleged that ARI's conduct included false and misleading representations, with specific reference to ARI's alleged misrepresentation that it had the right to collect the assigned debt and regarding certain aspects of the complaint, including the amounts owed, right to collect, and failure to attach proper documents (e.g. the original contract, assignment documents, and an accounting).

{¶ 21} The trial court granted ARI's motion for summary judgment on Moran's counterclaims. First, the court determined that ARI had demonstrated its right to collect, because it had established: the agreement between U.S. Bank and Moran and confirmed the account; the valid purchase and assignment of the account from U.S. Bank as assignor to ARI as assignee; and the amount owed on the account totaling $11,218.08. Accordingly, the trial court reasoned that ARI was entitled to summary judgment on Moran's counterclaims to the extent her claims were based on allegedly false or misleading representations as to the existence of the original Cardmember Agreement between Moran

and U.S. Bank, ARI's right to collect, the amount owed, and the validity of the assignment.

{¶ 22} Second, the court concluded that the exhibits attached to ARI's complaint consisted of the very materials that Moran claimed were missing (i.e. an affidavit from ARI attesting to the existence of the account, its assignment to ARI, and the balance due; a copy of the executed Bill of Sale and Assignment of Assets and the Asset Schedule for the account; and a monthly statement for the account with a final balance that equaled the amount owed on the account). However, the court concluded that, even if those documents had not included the materials claimed to be missing, a lawsuit filed without immediate means of proving the existence, amount, or true owner of the debt was not deceptive under the FDCPA.

{¶ 23} Third, the court reiterated that Moran's testimony that ARI's counsel or firm employees were exceptionally rude to her (e.g. they berated her, yelled at her, and mispresented information as to the hold on her account) was vague and failed to demonstrate any animating purpose related to collection on the account. Moreover, to the extent that Moran alleged receiving other harassing calls from ARI, she could not identify any such calls at her deposition, stating that she had a "spam blocker" on her phone. In so finding, the court concluded that Moran's testimonial evidence was insufficient to overcome ARI's motion for summary judgment on her counterclaims, as evidence from a responding party may not be speculative or conjecture.

{¶ 24} Finally, regarding Moran's miscellaneous allegations, the trial court found no basis for Moran's claim of invasion of privacy related to her personal identifiers in the complaint. It also determined that ARI was not a "collection agency" for purposes of R.C. 1319.12, because ARI was a creditor suing on its own behalf to collect a debt it purchased.

{¶ 25} In sum, the trial court found in favor of ARI on its action on account claim

against Moran and awarded ARI $11,218.08, plus statutory interest and court costs, and it granted summary judgment in favor of ARI as to all counterclaims asserted by Moran. Moran appeals.

## II.     Assignment of Error I

{¶ 26} In her first assignment of error, Moran contends that the trial court erred by failing to view the disputed facts in a light most favorable to her and by failing to resolve all reasonable inferences in her favor on summary judgment when genuine issues of material fact remained. She specifically argues that the trial court erred in considering the Bill of Sale and Assignment of Assets, which was submitted by ARI as Exhibit 1 but labeled at the top of the page as "Exhibit B." She asserts that, because the trial court had admitted her deposition, in which she testified that the "Exhibit B" designation suggested that the exhibit was part of a larger document, the court was required to consider her testimony regarding the document in a light most favorable to her; thus, the court erred when it considered the document when rendering summary judgment in ARI's favor. She also complains that the Asset Schedule submitted by ARI (1) lacked a decimal point in the account's balance and (2) consisted of a printout from a computer file that had not been reviewed by the court, thereby rendering it improper for consideration on summary judgment. We disagree.

*Summary Judgment Standard of Review*

{¶ 27} Summary judgment is appropriate pursuant to Ohio Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of a nonmoving party, reasonable minds can come to only one conclusion, that being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 28} Civ.R. 56(C) provides, in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. . . .

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).

{¶ 29} A motion for summary judgment forces the nonmoving party to produce evidence on any issue (1) for which that party bears the burden of production at trial and (2) for which the moving party has met its initial burden. *See Dresher v. Burt*, 75 Ohio St.3d 280 (1996). A nonmoving party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.*, 90 Ohio App.3d 421, 424 (2d Dist. 1993). "The party moving for summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact." *BAC Home Loans Servicing, L.P. v. Hall*, 2010-Ohio-3472, ¶ 12 (12th Dist.), citing *Dresher* at 292-93. "The nonmoving party must then rebut the moving party's evidence with specific facts showing the existence of a

genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Id*.; *see also* Civ.R. 56(E).

{¶ 30} The key to summary judgment is that there must be no genuine issue as to any material fact. Whether a fact is "material" depends on the substantive law of the claim being litigated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *Turner v. Turner*, 67 Ohio St.3d 337 (1993). An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 741 (8th Dist. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Mazur v. Kreuzer*, 2000 WL 731752 (2d Dist. June 9, 2000), quoting *Anderson*.

{¶ 31} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). If the nonmoving party fails to respond with evidentiary materials, an affidavit of the party moving for summary judgment is accepted as true. *Lawrence R. Barker Co., L.P.A. v. Overseas Dev. Corp.*, 64 Ohio App. 3d 545 (8th Dist.

1989).

{¶ 32} When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2013-Ohio-5234, ¶ 11 (2d Dist.), quoting *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist. 1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116 (1980). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist. 1993).

*Action on Account*

{¶ 33} "A contract is (1) an agreement, (2) with consideration (i.e., quid pro quo), (3) between two or more parties, and (4) to do or not to do a particular thing." *O'Brien v. Ohio State Univ.*, 2007-Ohio-4833, ¶ 44 (10th Dist.), citing *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10 (10th Dist. 2002), quoting *Lawler v. Burt*, 7 Ohio St. 340, 350 (1857). "The necessary elements of a valid contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration." (Citations omitted.) *Ayad v. Radio One, Inc.*, 2007-Ohio-2493, ¶ 25 (8th Dist.). There must be a meeting of the minds as to the essential terms of the agreement. *Id*. In order to prove a breach of contract, a plaintiff must establish (1) the existence and terms of a contract, (2) the plaintiff's performance of the contract, (3) the defendant's breach of the contract, and (4) damage or loss to the plaintiff. *O'Brien* at ¶ 44, citing *Powell*; *Roth Produce Co. v. Scartz*, 2001-Ohio-8866 (10th Dist. 2001); *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist. 1994).

{¶ 34} An account is an "unsettled claim by one person against another, based upon a transaction creating a debtor and creditor relation between the parties which is usually but not necessarily represented by an ex parte record kept by one or both of them." *Am. Sec. Serv., Inc. v. Baumann*, 32 Ohio App. 2d 237, 242 (10th Dist. 1972). An action on account is " 'founded upon contract' and constitutes a breach of contract claim." *Oberer v. Specialty Med. Care LLC*, 2023-Ohio-2610, ¶ 15 (2d Dist.), citing *Benchmark Contrs., Inc. v. Southgate Mgt., LLC*, 2014-Ohio-1254, ¶ 38 (10th Dist.). It is "a pleading device 'used to consolidate several claims which one party has against another.' " *Id.*, citing *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 2011-Ohio-6646, ¶ 13 (8th Dist.), quoting *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29 (8th Dist. 1981), paragraph one of the syllabus. Such action "simplifies pleadings by allowing a party to advance, as one claim, claims for separate breaches of contract based on a series of transactions by providing a summary of accounting for the transactions." *Id.*, quoting *Kwikcolor Sand* at ¶ 13.

{¶ 35} In general, "[a]n account must show the name of the party charged. It begins with a balance preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, item or items, dated and identifiable by number or otherwise, representing charges, or debts, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due." *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App. 2d 123, 126 (10th Dist. 1997).

{¶ 36} In the case before us, ARI submitted evidence to the trial court that showed: the terms and conditions of the account as set forth in the Cardmember Agreement; monthly billing statements issued on the account by U.S. Bank; documents memorializing U.S. Bank's sale of the account to ARI, including the Bill of Sale and Assignment of Assets; the

Asset Schedule; U.S. Bank and ARI's notices advising Moran of the sale; Moran's deposition, in which she admitted that she had obtained the account, used the account for purchases, been required to make and indeed made payments on the account, and stopped making payments on the account; Redell's Affidavit attesting to the sale of the account from U.S. Bank and the balance due; and Guglietta's Affidavit attesting to the sale of the account to ARI and the balance due at the time of the sale.

{¶ 37} This evidence demonstrated that U.S. Bank sold the account to ARI as part of a portfolio of charged off accounts. That sale was memorialized in the Bill of Sale and Assignment of Assets, which ARI submitted to the court and was authenticated by the Redell and Guglietta Affidavits. Additionally, the Asset Schedule identified Moran's name, address, and telephone number, the last four digits of her social security number, and the date Moran contracted with U.S. Bank.  It also provided the last four digits of the account number and the date of Moran's first delinquency, the date and amount of Moran's last payment, the date U.S. Bank charged off the account, and the amount Moran owed on the account, including interest and fees. These documents showed that ARI owned the debt owed by Moran and sufficiently demonstrated that there was no genuine issue of material fact with respect to ARI's action on account claim. Thus, ARI was entitled to judgment as a matter of law.

{¶ 38} Moran's speculation that the Bill of Sale and Assignment of Assets had been part of a larger document was insufficient to create a genuine issue of material fact for trial on the issue of ARI's ownership of the account. The Redell and Guglietta Affidavits established that the only document that sold and assigned the account to ARI was the Bill of Sale and Assignment of Assets. Moran did not present any evidence to rebut ARI's evidence of ownership of the account or that the balance due on the account was $11,218.08.

{¶ 39} Instead of offering evidence demonstrating a genuine issue of material fact on ARI's action on account claim, Moran and her counsel proffer allegations of perjury and evidence tampering against ARI, its counsel, and its affiants. Moran also argues that the Asset Schedule containing the account balance of "1121808" was missing a decimal place and thus could not be properly considered on summary judgment. However, we find this argument to be disingenuous and note that Moran did not present any evidence to challenge the accuracy of the balance due provided by ARI.

{¶ 40} Lastly, Moran argues that the trial court should not have considered any "printout" from the Asset Schedule without reviewing the original electronic file. However, under Evid.R. 1001(3), an original of a writing is the writing itself or any counterpart intended to have the same effect by a person executing or issuing it. "If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Evid.R. 1001(3). The Redell and Guglietta Affidavits were based on personal knowledge and provided that the documentary evidence, including the Asset Schedule, constituted true and accurate copies of the original data in the computer file. This was sufficient to establish the account and the amount owed. The burden then shifted to Moran to demonstrate a genuine issue of material fact as to ARI's action on account claim, which she failed to do. Moran's first assignment of error is overruled.

### III.    Assignment of Error II

{¶ 41} In her second assignment of error, Moran broadly argues that the trial court erred in granting summary judgment to ARI. She complains that the trial court impermissibly engaged in credibility determinations and weighing evidence on summary judgment when it determined that the Han Report was of questionable weight and that Moran's testimony lacked credibility. We disagree.

{¶ 42} Evidentiary materials to support or oppose a motion for summary judgment "are generally limited to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact." *Gurary v. John Carroll Univ.*, 2024-Ohio-3114, ¶ 35 (8th Dist.). "Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit." *Id.*, citing *Professional Bank Servs. v. Grossman DT, Inc.*, 2019-Ohio-2230, ¶ 10 (8th Dist.), citing *Dzambasow v. Abakumov*, 2005-Ohio-6719, ¶ 26 (8th Dist.).

{¶ 43} "An affidavit is 'a written declaration under oath, made without notice to the adverse party.' " *Id.* at ¶ 37, citing R.C. 2319.02. To constitute a valid affidavit, the declaration must be signed by the affiant and notarized. *Rababy v. Metter*, 2015-Ohio-1449, ¶ 10 (8th Dist.), citing *Rarden v. Dept. of Rehab. & Corr.*, 2012-Ohio-5667, ¶ 29 (10th Dist.) ("Although plaintiff responded with what purported to be an affidavit, it was not notarized and therefore did not qualify as an affidavit or any other form of evidence permitted under Civ.R. 56(C)."); *Humphrey v. Ohio Water Parks*, 97 Ohio App.3d 403, 404-405 (9th Dist. 1994) ("The general rule is that an affidavit must appear on its face to have been taken before the proper officer, and in compliance with all legal requisitions. . . . A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit. . . . '[I]t can only be regarded as the mere draft of an affidavit, never sworn to by the person by whom it purports to have been made.' "), quoting *Benedict v. Peters*, 58 Ohio St. 527, 536-537 (1898); *see also Toledo Bar Assn. v. Neller*, 2004-Ohio-2895, ¶ 24 (a writing that purported to be signed under penalty of perjury may not be substituted for an affidavit; "only a written declaration made under oath before a proper officer qualifies as an 'affidavit' "). "Submitted documents that have not been sworn, certified or authenticated by affidavit, in accordance with Civ.R. 56(C) and (E), generally have no evidentiary value and need not be considered

by the trial court in ruling on a summary judgment motion." *Gurary* at ¶ 35, citing, *e.g., Wolk v. Paino*, 2011-Ohio-1065, ¶ 26 (8th Dist.).

{¶ 44} "The admission or exclusion of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only on the showing of an abuse of that discretion." *R.T. v. Knobeloch*, 2018-Ohio-1596, ¶ 68 (10th Dist.), citing *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 45} At the outset, we note that the Han Report was neither declared under oath nor notarized. Under these circumstances, the trial court did not err in refusing to consider it, as it did not meet the requirements of an affidavit. Because the Han Report was not submitted in accordance with Civ.R. 56(C) and (E) and thus had no evidentiary value, the trial court did not abuse its discretion by not considering it, and we cannot say that the trial court erred even if it opined that the Han Report was of questionable weight.

{¶ 46} Moran next argues that the trial court erred in weighing the credibility of her deposition testimony. She draws our attention to the court's comments in its judgment. First, the court stated that "Moran lacks credibility when being aloof in responding to whether she paid U.S. Bank all of the money for her charges." It also observed: "Moran's lack of credibility is further indicated throughout her testimony when asked what the unpaid balance was[;] Moran responded she did not know but 'you guys said it was charged off.' " The court added, "Instead of admitting there was an unpaid balance, Moran stated she was unsure of what the balance was despite admitting to receiving the letter indicating the unpaid balance. Moran knows it was her account, had paid on it for years and then knowingly stopped payment but wants to contest whether she owes the balance alleged without any evidentiary

support that it is not owed."

{¶ 47} We find that the court's comments regarding Moran's credibility were harmless in light of the fact that there was no Civ.R. 56(C) evidence presented from which the court could have found that ARI did not own the account related to its claim or that Moran did not owe the amount due. We therefore conclude that the trial court did not engage in improper weighing of the evidence in ruling in favor of ARI on its motion for summary judgment. Moran's second assignment of error is overruled.

## IV.    Assignment of Error III

{¶ 48} In her third assignment of error, Moran contends that the trial court erred by declining to compel arbitration pursuant to a binding arbitration clause, which was subject to a non-waiver clause. Moran filed a demand for arbitration approximately eight months after this litigation commenced and after she had substantially participated in the proceedings, including by filing counterclaims. Under these circumstances, the trial court found that Moran had waived her arbitration rights.

{¶ 49} Moran now claims that the arbitration clause in the Cardmember Agreement was subject to a nonwaiver clause. The arbitration clause at issue stated:

Either you or we may elect in writing, and without the consent of the other, to arbitrate all Claims covered by this provision.

. . .

Claims subject to our agreement to arbitrate shall include all of the following:

(1) Claims related to or arising out of this Agreement, or any prior or later versions of this Agreement as well as any changes to the terms of this Agreement; (2) Claims related to or arising out of any aspect of any relationship between us that is governed by this Agreement, whether based in

contract, tort, statute, regulation, or any other legal theory; and (3) Claims that relate to the construction, scope, applicability, or enforceability of this arbitration provision.

. . .

Claims subject to our agreement to arbitrate shall not include . . . (2) Claims asserted by way of cross claim, counterclaim or any similar device against a party who has initiated a proceeding in court or other non-arbitral forum by any other party to that proceeding.

The nonwaiver clause cited by Moran stated: "[w]e do not give up our rights under the Agreement or applicable law when we fail to exercise or delay exercising those rights. Our failure or delay to exercise any right or remedy we have against you does not mean that we waive that right." Based on this nonwaiver clause, Moran argues that, if ARI's delay or failure to exercise the binding arbitration clause cannot constitute a waiver, fairness then prohibits ARI from arguing that Moran's delay or failure to exercise the arbitration clause constitutes a waiver. We disagree.

{¶ 50} Like any other contractual right, the right to arbitrate may be waived. *John A. Becker Co. v. Jedson Eng., Inc.*, 2018-Ohio-3924, ¶ 12 (2d Dist.), citing *White v. Smith*, 2015-Ohio-1671, ¶ 24 (2d Dist.), quoting *Murtha v. Ravines of McNaughton Condominium Assn.*, 2010-Ohio-1325, ¶ 20 (10th Dist.). "Given Ohio's public policy favoring arbitration, the party asserting that the right to arbitrate has been waived bears the burden of proving waiver." (Citation omitted.) *Id.*, citing *Morris v. Morris*, 2010-Ohio-4750, ¶ 17 (10th Dist.).

{¶ 51} " ' "A party asserting waiver must prove that the waiving party knew of the existing right to arbitrate and, based on the totality of the circumstances, acted inconsistently with that known right." ' " *Id.*, citing *White v. Smith*, 2015-Ohio-1671, ¶ 24 (2d Dist.),

quoting *Pinnell v. Cugini & Cappoccia Builders, Inc.*, 2014-Ohio-669, ¶ 18 (10th Dist.). " ' "In determining whether the totality of the circumstances supports a finding of waiver, a court may consider such factors as: (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay; (2) the delay, if any, by the party seeking arbitration to request a stay; (3) the extent to which the party seeking arbitration has participated in the litigation; and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the non-moving party." ' " (Citations omitted.) *Id.*, quoting *Pinnell* at ¶ 18.

{¶ 52} The question of waiver is generally a fact-driven issue. *Murtha* at ¶ 20, quoting *ACRS, Inc. v. Blue Cross & Blue Shield of Minnesota*, 131 Ohio App.3d 450 (8th Dist. 1998). "When determining whether a party has waived its right to arbitration under a contractual agreement, we review for an abuse of discretion." *Fayette Drywall, Inc. v. Oettinger,* 2020-Ohio-6641, ¶ 20 (2d Dist.), citing *Paulozzi v. Parkview Custom Homes, LLC*, 2018-Ohio-4425, ¶ 12 (8th Dist.), citing *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, ¶ 9 (8th Dist.) and *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543 (8th Dist.).

{¶ 53} Moran posits for the first time on appeal that the Agreement's unilateral nonwaiver provision supports a conclusion that the trial court erred in denying her motion to compel arbitration. Moran never raised this argument in the trial court. "It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." *Dolan v. Dolan*, 2002-Ohio-2440, ¶ 7 (11th Dist.), citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43 (1975). Because Moran did not previously present this argument, she has waived any assertion of error on appeal on the basis of the nonwaiver provision.

{¶ 54} Moreover, it is undisputed that Moran was aware of the arbitration provision in the Cardmember's Agreement, and the record supports the trial court's conclusion that

Moran acted inconsistently with her right to arbitrate. Moran engaged in defending this litigation for more than eight months and further invoked the jurisdiction of the trial court by asserting her own counterclaims, which were not subject to the arbitration provision, before ever seeking arbitration. Considering the totality of the circumstances, the trial court acted within its discretion in concluding that Moran knowingly and intentionally waived her right to arbitration. Therefore, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably by denying Moran's motion to compel arbitration. Moran's third assignment of error is overruled.

## V.    Conclusion

{¶ 55} Having overruled Moran's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HANSEMAN, J., concur.